**HULTBERG, Appellant,**

v.

**OHIO EDISON COMPANY, Appellee.**

[Cite as *Hultberg v. Ohio Edison Co.* (1996), 116 Ohio App.3d 130.]

Court of Appeals of Ohio,
Seventh District, Jefferson County.

No. 96–JE–7.

Decided Dec. 5, 1996.

*Richard Olivito*, for appellant.

*Aretta K. Bernard* and *Gary Spring*, for appellee.

---

JOSEPH E. O'NEILL, Presiding Judge.

This cause originated in the trial court when the present appellant, Mary Lou Hultberg, filed a complaint naming the present appellee, Ohio Edison Company, as defendant. The complaint contained six counts.

The first count alleged that the appellant had been employed by the appellee and that, while she was absent from work by leave and on a bona fide workers' compensation claim due to a work-related injury, she was wrongfully discharged and terminated in violation of the laws of Ohio. It was alleged that her discharge was due to the fact that she had filed a workers' compensation claim. This count also alleged that the custom and policy created around the employer's discharge policy for absences due to work-related injuries was unfairly and unequally applied toward her.

The second count alleged that the appellant was wrongfully discharged without just cause by the appellee in violation of an implied contract of employment that existed between the appellant and the appellee.

The third count alleged that the appellant had relied upon practices and manner of equal custom and treatment to persons similarly situated on the part of her employer and that the appellant relied upon these representations in not seeking other employment or changing her employment and, as a result thereof, suffered damages.

Count number four alleged that the appellant was a qualified handicapped person and, as such, was wrongfully discharged without just cause when she was terminated without first being afforded any reasonable accommodation by the appellee employer.

The fifth count alleged that the appellee's conduct, in terminating the appellant's employment contrary to its custom policy and course of dealing, constituted a discriminatory practice in light of her status as a female injured worker.

Count number six alleged that the actions of appellee in wrongfully discharging the appellant without just cause constituted an intentional infliction of serious emotional stress.

Following an answer by the appellee and the completion of discovery, the appellee eventually filed a motion for summary judgment. This motion for summary judgment, with various references to evidentiary matters properly before the trial court, was directed to each and all of the six causes of action set forth in the complaint.

■ The appellant, in her first assignment of error, complains that the trial court erred in granting the appellee's motion for summary judgment on the ground that she had waived her claim for handicap discrimination.

The appellant's claim, as to handicap discrimination, appeared in Counts Four and Five of her complaint. These claims were specifically denied by the appellee in its answer. Specifically, the appellee raised as a part of its affirmative defenses that these claims were barred because the appellant had previously filed a charge of discrimination with the Ohio Civil Rights Commission and further were barred by the doctrine of laches, waiver, and estoppel. The claim of handicap discrimination was specifically addressed in the appellee's motion for summary judgment as to Counts Four and Five of the complaint. There was a specific response in the appellant's memorandum in opposition to the motion for summary judgment. During the hearing on the motion for summary judgment, the following dialogue took place:

"COURT: Let me interrupt you before we go too far into this. It looks to me as if the only claims presently being pursued or I think that you're going to have to argue is the second and third count, implied contract employment and promissory estoppel.

"ATTORNEY SPRING [Counsel for appellee]: Correct.

"COURT: Am I right on that, Mr. Olivito?

"ATTORNEY OLIVITO [Counsel for appellant]: Yes.

"COURT: 'Cause I don't see any evidence for any of the other claims.

"ATTORNEY OLIVITO: That's correct.

"ATTORNEY SPRING: Yes, I think the rest of the cause of action have [*sic*] kind of fallen away."

In its motion for summary judgment, the appellee specifically addressed the allegation of handicap discrimination.

The issue as to handicap discrimination was discussed by the appellant in her memorandum filed in opposition to the motion for summary judgment.

In oral argument on the motion for summary judgment, counsel for the appellant, as a part of his argument, addressed the issue of disability discrimination.

In his dispositive judgment entry, the trial judge specifically stated that he found no evidence to support Counts Four and Five of the appellant's complaint. Based upon this, we must assume that he considered, in his disposition of the motion for summary judgment, Counts Four and Five dealing with handicap discrimination of the appellant's complaint.

The statutory definitions of "handicap" and "handicapped person" are found in R.C. 4112.01(A), which reads as follows:

"(13) 'Handicap' means a physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working; a record of a physical or mental impairment; or being regarded as having a physical or mental impairment.

" * * *

"(21) 'Handicapped person' means a person with a handicap."

It was clearly established in the deposition of the appellant that, following her discharge, the appellant filed with the Ohio Civil Rights Commission a charge of discrimination on July 24, 1991. In her charge of discrimination, the appellant set forth:

"I was informed by a letter from the Plant Superintendent that I was discharged because of absences and that I was not considered a productive employee.

"I believe I was discharged because of my handicap lower back injury, my sex, female, and my age, 41."

On April 2, 1992, the Ohio Civil Rights Commission informed the appellant:

"There is no evidence to substantiate the Charging Party was terminated because of her handicap, sex, and/or age. Charging Party had been off from work for more than three years out of the last four due to medical restrictions. She had exhausted her sickness and injury benefits and was discharged pursuant to Respondent's policy. Other employees similarly situated have been discharged, regardless of their sex, age and/or physical condition.

"Upon investigation, the Ohio Civil Rights Commission has determined that it is not probable that Respondent has engaged in practices unlawful under Section 4112., Revised Code, and hereby orders the case dismissed."

Pursuant to R.C. 4112.06, the appellant could have filed a petition in the common pleas court within thirty days of the order. Pursuant to R.C. 4112.06, the court, wherein the petition has been filed, has fairly widespread jurisdiction not only to consider evidence that was before the Civil Rights Commission, but also to allow additional evidence. Appellant did not take advantage of this appeal. The Court of Appeals for Lucas County has addressed this circumstance in the case of *Gallant v. Toledo Pub. Schools* (1992), 84 Ohio App.3d 378, 616 N.E.2d 1156, wherein headnote one reads as follows:

"Teacher who initially brought age discrimination claim before Ohio Civil Rights Commission (OCRC) could not bring independent age discrimination action in common pleas court after her claim was dismissed by OCRC for lack of probable cause. * * * "

The Lucas County Court of Appeals stated that the abandonment of the appellate process from the Ohio Civil Rights Commission, in favor of a civil action, is not one to be warranted. The court specifically stated, at 383, 616 N.E.2d at 1159:

" * * * If that claimant first chooses administrative action, she should also be prevented from later switching to a lawsuit which had been available to her but which was bypassed at the outset."

*Gallant* was cited with approval by the Court of Appeals for Cuyahoga County in *DeCrane v. Westlake* (1995), 103 Ohio App.3d 481, 659 N.E.2d 885. After referring to *Gallant,* the Cuyahoga County Court of Appeals stated at 486, 659 N.E.2d at 889:

"We agree with the Lucas County Appellate Court in holding that '[t]his abandonment of one process in favor of another is not warranted.' * * * "

We agree with the Lucas County Court of Appeals and the Cuyahoga County Court of Appeals that the abandonment of one process in favor of another is not warranted and that when the appellant abandoned her administrative appeal, she was forever barred from raising a handicap discrimination cause in an independent action.

The first assignment of error is found to be without merit.

Count Two of the appellant's complaint alleged that she was wrongfully discharged without just cause by the appellee in violation of an implied contract of employment that had existed between the parties as the result of habits, custom, and courses of dealing with the appellant as to her job security.

Count Three of the complaint alleged that the appellant was wrongfully discharged without just cause and that it could be demonstrated that she relied upon the practices and manner of equal custom and treatment to persons similarly situated in not seeking other employment or changing her employment. The appellant went on to allege under this count that the wrongful termination of the appellant by the appellee, in violation of the effect that the rule of promissory estoppel had on the appellant's employment relationship, proximately resulted in losses and damages.

In its motion for summary judgment, the appellee specifically addressed the second and third causes of action. In disposing of the motion for summary judgment, the trial judge specifically found that there was no implied contract of employment, and he further specifically found that there was nothing upon which the appellant could point to support a finding of promissory estoppel. These two findings by the trial judge are the subject of appellant's assignment of error number two.

The appellant did not have a written contract of employment with the appellee, nor was she a member of a bargaining unit that had negotiated a contract with the appellee. She was at least at the inception of her employment an at-will employee. In such circumstance, either party to the employment-at-will agreement may terminate the employment relationship for any reason that is not contrary to law. This doctrine has been repeatedly followed by most jurisdictions, including Ohio, which has long recognized the right of employers to discharge employees at will. *LaFrance v. Internatl. Bhd.* (1923), 108 Ohio St. 61, 140 N.E. 899; *Henkel v. Educational Research Council* (1976), 45 Ohio St.2d 249, 74 O.O.2d 415, 344 N.E.2d 118. In *Henkel,* the Supreme Court stated that the facts and circumstances surrounding an at-will agreement should be considered to ascertain whether they indicate what took place, the parties' intent, and the existence of implied or expressed contractual provisions that might alter the terms for discharge. This doctrine was accepted and cited by the Supreme Court in paragraphs one, two, and three of the syllabus of *Mers v. Dispatch Printing Co.* (1985), 19 Ohio St.3d 100, 19 OBR 261, 483 N.E.2d 150, as follows:

"1. Unless otherwise agreed, either party to an oral employment-at-will employment agreement may terminate the employment relationship for any reason which is not contrary to law.

"2. The facts and circumstances surrounding an oral employment-at-will agreement, including the character of the employment, custom, the course of dealing between the parties, company policy, or any other fact which may illuminate the question, can be considered by the trier of fact in order to determine the agreement's explicit and implicit terms concerning discharge.

"3. The doctrine of promissory estoppel is applicable and binding to oral at-will employment agreements. The test in such cases is whether the employer should have reasonably expected its representation to be relied upon by its employee and, if so, whether the expected action or forbearance actually resulted and was detrimental to the employee."

In *Wright v. Honda of Am. Mfg., Inc.* (1995), 73 Ohio St.3d 571, 574–575, 653 N.E.2d 381, 384, the Supreme Court very clearly set forth tests to be applied to a case such as the one at hand:

" * * * Thus, in order to overcome a summary judgment motion and raise a factual issue as to whether an employment-at-will agreement has been altered by an implied agreement, the trier of fact can consider, in addition to the facts and circumstances set forth in *Mers v. Dispatch Printing Co., supra*, such evidence, which includes, but is not limited to, that information contained in employee handbooks, oral representations made by supervisory personnel that employees have been promised job security in exchange for good performance, and written assurances reflecting company policy."

It was the appellant's contention in the summary judgment proceeding that Ohio Edison had modified her employment-at-will relationship, it promulgated a set of policies, practices and course of conduct in dealings with the appellant so as to create the impression that her employment relationship was not one of employment-at-will but rather one of implied contract wherein she could only be terminated with just cause. It was the appellant's contention in the summary judgment proceedings that, during the period that she was on sick leave, her at-will relationship with the appellee was altered by representations made by supervisory personnel of the appellee. In support of this, the appellant directs our attention to dialogue in her deposition:

"MR. OLIVITO [Counsel for appellant]: Do you want to talk to me?

"THE WITNESS: Well, I think he's trying to get me to say something exactly the way he wants it to be.

"Q. Well tell me what was said?

"A. I was given the impression repeatedly that if I could continue to rehabilitate myself my job was there when my doctor released me.

"Q. You said you were given the impression, but what was said to give you that impression? Who said what?

"A. 'You are a valuable employee. We need you. We want you. We miss you. We want you back.' Those kinds of comments.

"Q. Did that ever change over time?

"A. Well, when they didn't say they wanted me back, you mean—

"Q. I mean were they making those kind of statements in 1988 and 1989; but as time passed, were those same sorts of things being said?

"A. The last time I was at the plant was in November of 1989. I had a meeting with Guy Pippeone and Jay Hultz. At that time, Guy told me I had an excellent work record, he wanted to see me come back to work; and I assured him that I wanted to come back to work and that as soon as my doctor released me I would be back."

We cannot afford anything to the foregoing questions and answers as being anything more than praise with respect to job performance and a discussion for return to work. The appellant was lauded as being a good employee and a desire that she return to work. However, reason must be attached to everything. Four years is a long time to hold a position open in any business. These statements very obviously did not carry with them any promise of long-time job security.

We agree with the trial court that in the summary judgment proceedings the appellant was not able to present any evidence that would lead to any finding that the employment-at-will agreement had been altered into one of implied contract. As to any written handbooks, manuals, or memos, the appellant was not able to prove that she was ever given any of these which in any way altered the employment-at-will. The deposition testimony showed the following:

"Q. My question is, though, did anyone ever tell you or were you ever given anything in terms of a memo or document that said, 'Ohio Edison will not let you go except for just cause.'?

"A. I was never given anything that would tell me what would or would not get someone fired."

The appellant also argues that during her sick leave she was constantly required to provide medical documentation and cooperate by visiting various officials of Ohio Edison as a condition of employment. Upon our review of exhibits that were made a part of the deposition, it is obvious that these requirements were a condition of her continuing to receive sick pay and in no way modified the employment-at-will agreement.

█ Appellant also contends that when she received her letter of termination, on January 14, 1991, for the first time she became aware that the appellee had a company policy in relationship to termination. In pertinent part, this letter reads as follows:

"The medical documentation we have on file indicates that you are unable to return to your job as a technologist due to medical restrictions at this time. Our records further indicate that you have exhausted the company portion of your sick pay industrial benefits as of January 11, 1991. Therefore, since these

benefits have been exhausted, your employment with Ohio Edison Company has been terminated effective January 12, 1991. * * * "

The appellant responded to this letter with a letter to the Ohio Edison Company stating that she had never been made aware of the company policy that was cited as a reason for her dismissal, and she asked that she be furnished with a copy of that policy. In essence, the response of the appellee to this letter stated in part:

" * * * Under the company's policy, you were absent for approximately three years over the four-year period in which you received benefits. At the time you exhausted benefits, you were not able to return nor was there any [medical] documentation as to when or if you would ever be able to return. This inability to return to work makes it impossible for the company to accommodate your absence any longer."

During her deposition, the appellant was asked if at any time, during her four-year absence, she was ever declared medically able to return to work and her response was "No." At the time of her termination, she was not medically able to return to work. This policy, although an internal policy, did not affect the employment-at-will relationship.

The appellant also argues that there were certain material issues of fact as to her allegation of promissory estoppel. This court has recently addressed the issue of promissory estoppel in *Schneider v. Morse* (Aug. 30, 1995), Carroll App. No. 637, unreported, 1995 WL 516966. In that case, Judge Cox specifically stated:

" 'Ohio has set forth the elements necessary for the application of the doctrine of promissory estoppel. There must be a promise, clear and unambiguous in its terms, reliance by the party to whom the promise is made, the reliance must be reasonable and foreseeable, and the party claiming estoppel must be injured by the reliance.' "

Upon our review of all the matters before the trial judge in the summary judgment, we cannot conclude that there was a clear and unambiguous promise. We cannot conclude that there was reliance by the appellant upon any promise. We do not find from a review of the evidentiary matters that the appellant was injured in any way by reliance upon any promise.

This second assignment of error is found to be without merit.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

GENE DONOFRIO and COX, JJ., concur.