CARNEY, Appellant,

v.

CLEVELAND HEIGHTS–UNIVERSITY HEIGHTS
CITY SCHOOL DISTRICT, Appellee.

[Cite as *Carney v. Cleveland Hts.–Univ. Hts. City
School Dist.* (2001), 143 Ohio App.3d 415.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 78051.

Decided May 29, 2001.

416

418

*Alan I. Goodman,* for appellant.

*Britton, McGown, Smith, Peters & Kalai, David K. Smith, Scott C. Peters* and *Deitri E. Villarreal,* for appellee.

JAMES D. SWEENEY, Presiding Judge.

Plaintiff-appellant, Marilyn Carney[1] appeals from (1) the granting of summary judgment in favor of defendant-appellee-movant University Heights City School District, and (2) the denial of her motion to amend the complaint to name the Cleveland Heights–University Heights Board of Education as the defendant. For the reasons adduced below, we affirm the granting of summary judgment.

A review of the record on appeal indicates that in December 1997, during the middle of the school year term, there occurred a teaching vacancy in the Middle Schools Scholars Program, a.k.a. the "gifted program," at the Monticello Middle School ("Monticello"), which is located in Cleveland Heights, Ohio, and is one of three middle schools included in the Cleveland Heights–University Heights City School District. The vacancy was caused by the resignation of a Caucasian female teacher, who was one of four teachers (all Caucasian females at that time, and all of whom were certified by the state of Ohio to teach in gifted education pursuant to Ohio Adm.Code 3301–23–21) in the district's gifted program. The gifted program permits students within it to select topics to explore in greater

---

1. Carney is a Caucasian female.

detail (overseen by the gifted program teacher) in addition to their regular course work (which is the responsibility of the student's regular teacher). The district's coordinator for the gifted program was James Rust, a Caucasian male. According to Rust, the majority of the students in the gifted program are African–Americans. The teachers in the gifted program report directly to Rust and it was his responsibility to fill the teaching vacancy in the gifted program.

The principal at Monticello Middle School was Juliette Helmick, an African–American female.[2] Rust, who had been appointed to his position as coordinator of the gifted program approximately three months prior to the interviews, invited Helmick to assist in the interviewing process for the vacant position because the vacancy was in her school.

A total of four candidates applied for the vacant position: Carney and Debra Frost (who were current employees of the District but not assigned to any gifted program), and Barbara Parr and Christine Gibbons (who were not employees of the District).[3] These candidates were jointly interviewed by Rust and Helmick, after which they assessed the qualities of the candidates and rated them accordingly. Rust and Helmick both concluded that Frost was the best qualified candidate and that Carney was not. On January 20, 1998, Rust offered the vacant position at Monticello Middle School to Frost. Several days later, Carney was informed by Linda Koenig (the District's Executive Director of Human Resources) that she did not get the job. It is conceded by the parties that Carney was not pleased with the selection of Frost, believing that she was more qualified for the position than the chosen candidate.

On February 14, 1998, Carney filed a grievance through the Cleveland Heights Teachers Union ("Union"), of which she was a member, alleging that the appointment of Frost violated Board policy and the Union collective bargaining agreement. The school administration ultimately denied the grievance and the Union did not appeal that decision.

On May 6, 1998, after the Union grievance had been denied, Carney filed a charge with the Ohio Civil Rights Commission ("OCRC"), alleging racial discrimination in the selection of Frost over Carney. Subsequent to an investigation, the OCRC denied the charge due to a lack of probable cause and notified Carney of this determination in late January 1999. Carney did not seek further judicial review of this OCRC determination. See R.C. 4112.06.

---

**2.** According to Helmick, the student body at Monticello is approximately seventy percent African–American and the majority of the teachers there are Caucasian. Interestingly, District records indicate that approximately two-thirds of the teachers at Monticello are African–American. See Plaintiff's Exhibit F, Document 1.

**3.** Frost is African–American. Parr and Gibbons are Caucasian.

Prior to the appellee being notified of this OCRC racial discrimination filing, Koenig and Pamela Smith[4] (the Associate Superintendent for Instruction) met in approximately April 1998 to assess the staffing needs of the District for the upcoming 1998–1999 school year.[5] Based on a number of factors (including enrollment, licensure needs for particular educational programs, teacher job performance, anticipated staffing changes throughout the District, and relocating teachers to an environment that would better suit a particular teacher's needs or performance levels) they decided to transfer Carney from Monticello Middle School to Taylor Academy for that upcoming school year. According to Koenig, the Carney transfer was motivated by the following factors: the smaller-sized classrooms at Taylor would better suit Carney's alleged classroom management deficiencies and Carney was perceived as an obstacle to Helmick's attempt to reform and upgrade Monticello's overall program. Carney's transfer recommendation was thereafter approved by Superintendent Dr. Paul Masem, and Carney, pursuant to the collective bargaining agreement, was notified of the transfer on June 1, 1998.

Shortly after being notified of the transfer, Carney applied for a teaching position at the District's high school (Cleveland Heights High School), but was not chosen from the pool of seven applicants interviewed by Chambers, the high school's building administrator.[6]

Following Carney's transfer notice, the District claimed that it received notice of the original OCRC charge in early June 1998. At some point following the transfer notice, Carney filed a second charge with the OCRC alleging retaliation in her transfer. Ultimately, this retaliation charge was investigated by the OCRC, which determined that the charge lacked probable cause. Carney did not seek further judicial review of this second charge determination.

Carney filed the action *sub judice* pursuant to R.C. 4112.99 on March 3, 1999, alleging two discrimination-based causes of action, namely (1) reverse race discrimination pursuant to R.C. 4112.02(A) in selecting Frost for the Monticello gifted program instead of Carney, and (2) retaliatory discrimination pursuant to R.C. 4112.02(I) in involuntarily transferring Carney to Taylor Middle School and

---

4. Smith is African–American.

5. As noted by appellee, the seven teachers newly assigned to Monticello for the 1998–1999 school year to fill positions of those teachers who were transferred, including the teacher chosen to fill Carney's regular teaching position, were Caucasian.

6. Chambers, a Caucasian female, originally chose a Caucasian female as the most qualified candidate for the position. However, the second most qualified applicant, an African–American female, was hired for the position because the original choice had accepted a position with another school district.

denying Carney teaching opportunities at other schools in the District due to Carney's opposition to the selection of Frost and Carney's filing charges with the OCRC.

The District filed its motion for summary judgment on January 24, 2000. Summary judgment was premised on the following bases: (1) that the named defendant, the Cleveland Heights–University Heights City School District, is not *sui juris*, in other words, an entity capable of being sued, (2) that the trial court lacked subject matter jurisdiction over the action due to (a) Carney's failure to exhaust her administrative remedies or (b) because the court is bound by the OCRC's findings and determinations, (3) that Carney could not meet her burden of proof in making her claims of race discrimination and/or retaliation, and (4) that, in the event that Carney did obtain a judgment on her claim(s), attorney fees could not be awarded in the action.

On March 6, 2000, the trial court scheduled the final pretrial conference for July 27, 2000, and trial to commence on August 21, 2000.

On March 24, 2000, Carney filed a brief in opposition to summary judgment and, separately, a motion to amend her complaint to name "Cleveland Heights–University Heights Board of Education" as the proper party defendant. On April 7, 2000, Carney filed a motion to strike the affidavit of Dr. Melvin Arnoff, which was attached to the motion for summary judgment. On April 19, 2000, Carney filed a motion to supplement her brief in opposition by adding the affidavit of Barbara Parr.

On April 26, 2000, the trial court, using half-sheet status form entries without legal reasoning, granted summary judgment in favor of the defendant, denied the motion to strike the affidavit of Dr. Arnoff, and denied as moot (because summary judgment was granted in defendant's favor) the motion to amend the complaint. Subsequently, on May 11, 2000, the trial court ruled that the motion to supplement Carney's brief in opposition with the additional affidavit of Barbara Parr was moot. On May 22, 2000, Carney filed her notice of appeal from the orders of April 26, 2000, and May 11, 2000. Three assignments of error are presented for review.

The first and second assignments of error are interrelated so they will be addressed jointly. These two assignments of error provide the following:

I

"The trial court erred in granting the district's motion for summary judgment."

## II

"The court erred in failing to allow appellant to amend her complaint to name the Cleveland Heights–University Heights Board of Education as a party defendant."

The standard of review for a ruling on a motion for summary judgment was recently stated by this court, as follows:

"The Ohio Supreme Court has established that summary judgment under Civ.R. 56 is proper when:

" '(1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made.' *State ex rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377 [1379]; *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, [4 O.O.3d 466, 472] 364 N.E.2d 267 [274].

"The party seeking summary judgment bears the burden of showing that no genuine issue of material fact exists for trial. *Celotex Corp. v. Catrett* (1987), 477 U.S. 317, 330, 106 S.Ct. 2548 [2556], 91 L.Ed.2d 265 [278]; *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798, [801]. Doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 358–359, 604 N.E.2d 138, [139–140].

"However, the nonmoving party must produce evidence on any issue for which that party bears the burden of production at trial. *Wing v. Anchor Media, Ltd.* (1991), 59 Ohio St.3d 108, 111, 570 N.E.2d 1095, [1099]; *Celotex, supra,* at 322 [106 S.Ct. at 2552, 91 L.Ed.2d at 273]. In accordance with Civ.R. 56(E), 'a nonmovant may not rest upon the mere allegations or denials of his pleadings, but must set forth specific facts showing there is a genuine issue for trial.' *Chaney v. Clark Cty. Agricultural Soc.* (1993), 90 Ohio App.3d 421, 424, 629 N.E.2d 513 [515]." *Bisbee v. Cuyahoga Cty. Bd. of Elections* (Mar. 1, 2001), Cuyahoga App. No. 77629, unreported, 2001 WL 204174.

As previously indicated, the motion for summary judgment was based on four different grounds and the trial court, without elucidation, granted the motion. Because of the gross intellectual insouciance of the trial court in failing to indicate what particular basis it found applicable in granting the motion, we must examine each of the grounds advanced by the movant-defendant-appellee.

The first basis for granting the motion for summary judgment was that the named defendant, the Cleveland Heights–University Heights City School District,

is not *sui juris.*[7] This argument prompted Carney to file her motion to amend her complaint to name the board of education as the party defendant.

In the not-too-distant past this court stated the following, which would support the argument of the defense in this action:

"[I]n legal actions involving the schools, it is the board of education which must be sued. See, R.C. 3313.17. Moreover, an action against the board must be brought against it in its corporate capacity and not against the individual members of the board. *Halliday v. Marchington* (1932), 44 Ohio App. 132 [184 N.E. 698]." *Catchings v. Cleveland Public Schools* (Apr. 1, 1982), Cuyahoga App. No. 43730, unreported, 1982 WL 5261.

Since making this observation, a number of courts, as observed by the appellant, have concluded that for purposes of political subdivision tort liability under R.C. Chapter 2744, a school district, because it is a political subdivision pursuant to R.C. 2744.01(F), is subject to being sued. *Turner v. Cent. Local School Dist.* (1999), 85 Ohio St.3d 95, 706 N.E.2d 1261 (school district sued for negligence in prescribing and following a school bus route, supervising its employees, and for letting a child student off the school bus early); *Jones v. Huntington Local School Dist.* (Feb. 8, 2001), Ross App. No. 00CA2548, unreported, 2001 WL 243293 (school district sued for negligence involving an automobile accident with a school bus); *Levenson v. Orange City School Dist.* (Mar. 20, 1997), Cuyahoga App. No. 71410, unreported, 1997 WL 127190 (school district sued for negligence in maintaining a school sidewalk). The common theme of these cases, indeed the purpose of R.C. 2744.01 *et seq.,* is to address claims of tort against a political subdivision. The action brought by Carney alleges claims for relief based on R.C. Chapter 4112, claims which arise out of the employment situation between Carney and her employer. To the extent that these claims by Carney can be regarded as tortious, R.C. Chapter 2744 does not apply to them by virtue of the specific exemption for "civil actions by an employee, * * * against his political subdivision relative to any matter that arises out of the employment relationship between the employee and the political subdivision." R.C. 2744.09(B). Accordingly, since R.C. Chapter 2744 has no application to the present action, the school district is not capable of being sued using *Turner, Jones,* and *Levenson* as precedent.

Having concluded that the school district is not the proper party defendant, we now turn our attention to whether the trial court erred in not granting Carney's motion to amend the complaint so as to name the board of education as the proper party defendant.

---

7. This affirmative defense was pled as the "Fifth Defense" in defendant's answer.

Civ.R. 15(A) provides that a party may amend its pleading by leave of court and that such leave "shall be freely given when justice so requires." The decision of whether to grant a motion for leave to amend a pleading is within the discretion of the trial court. *Wilmington Steel Products v. Cleveland Elec. Illum. Co.* (1991), 60 Ohio St.3d 120, 121–122, 573 N.E.2d 622, 624–625. While Civ.R. 15(A) allows for liberal amendment, motions to amend pleadings should be refused if there is a showing of bad faith or undue delay by the movant, or undue prejudice to the opposing party. *Hoover v. Sumlin* (1984), 12 Ohio St.3d 1, 12 OBR 1, 465 N.E.2d 377, paragraph two of the syllabus.

In the present action, we can discern no bad faith or undue delay by the movant, and no prejudice to the defendant should the identity of the named defendant be changed from the school district to the board of education. Discovery had been largely completed or completed, and there is no indication that the trial date, scheduled for late summer in 2000 (approximately five months following the filing of the motion to amend), would be affected. The motion to amend was unopposed by the defendant-appellee at the trial court level, which only serves to buttress our conclusion that there was no prejudice to the defendant and no demonstration of bad faith or undue delay. For all intents and purposes, the amendment was nothing more complicated than a simple name change. Thus, the trial court abused its discretion in not granting the motion to amend, and summary judgment using the doctrine of *sui juris* was, had the amendment been granted, improper.

We now turn to the second basis alleged in the motion for summary judgment, namely, two sub-arguments surrounding the administrative proceedings: (a) that the trial court lacked subject matter jurisdiction because Carney, having elected to initiate claims before the OCRC alleging race discrimination and retaliatory transfer, failed to exhaust her administrative remedies through her not seeking judicial review of the OCRC determinations, or, in the alternative, (b) that the trial court was bound by the findings and determinations of the OCRC.

In addressing the first sub-argument, whether Carney was required to exhaust her administrative remedies prior to instituting her common-law action pursuant to R.C. 4112.99, we note that the most recent case in Ohio dealing with this precise issue is *Bourquin v. KeyBank* (2000), 138 Ohio App.3d 435, 741 N.E.2d 584. In *Bourquin*, the plaintiff filed claims before the United States Equal Opportunity Commission ("EEOC") and the OCRC alleging race and disability discrimination and retaliation. After receiving a negative determination by the EEOC, but before the OCRC issued its determination, Bourquin filed an action in common pleas court alleging race, disability, and retaliatory discrimination under both federal and state law. Ultimately, the trial court granted summary judgment in favor of KeyBank. The issue on appeal from that ruling

was whether "a plaintiff pursuing a race or disability discrimination claim is forced to elect to seek remedies administratively or at law." *Id.* at 437, 741 N.E.2d at 585. The appellate court, holding that *Hultberg v. Ohio Edison Co.* (1996), 116 Ohio App.3d 130, 687 N.E.2d 12, improperly extended the required election of remedies under R.C. 4112.02(N) for age discrimination to claims involving sex and handicap discrimination, determined that the election of remedies under R.C. 4112.02(N) only applied to claims of age discrimination and no other category of claim. The appellate court also determined that the trial court's reliance on *Gallant v. Toledo Pub. Schools* (1992), 84 Ohio App.3d 378, 616 N.E.2d 1156, was misplaced because the *Gallant* case, unlike the claims advanced by Bourquin, involved an age discrimination claim and an election of remedy under R.C. 4112.02(N). Thus, race, disability, and retaliation claims do not, as a matter of law, require an election of remedies by a claimant. *Bourquin v. KeyBank,* 138 Ohio App.3d at 437, 741 N.E.2d at 585–586, citing *Larkins v. G.D. Searle & Co.* (1991), 68 Ohio App.3d 746, 749–751, 589 N.E.2d 488, 490–491; *Griswold v. Fresenius USA, Inc.* (N.D.Ohio 1997), 964 F.Supp. 1166, 1169; *Kramer v. Windsor Park Nursing Home, Inc.* (S.D.Ohio 1996), 943 F.Supp. 844, 856; *Hedrick v. Honeywell, Inc.* (S.D.Ohio 1992), 796 F.Supp. 293, 297–298. See, also, *Ray v. Libbey Glass, Inc.* (N.D.Ohio 2001), 133 F.Supp.2d 610, 616–617, citing *Bourquin v. KeyBank* (election of remedies is limited to age discrimination cases); *Smith v. Friendship Village of Dublin, Ohio, Inc.* (June 29, 2000), Franklin App. No. 99AP–1332, unreported, 2000 WL 861173, citing *Larkins v. G.D. Searle & Co.,* 68 Ohio App.3d 746, 589 N.E.2d 488.[8]

Appellee, in addition to the previously cited cases of *Hultberg v. Ohio Edison Co.,* 116 Ohio App.3d 130, 687 N.E.2d 12 and *Gallant v. Toledo Pub. Schools,* 84 Ohio App.3d 378, 616 N.E.2d 1156, relies on *DeCrane v. Westlake* (1995), 103 Ohio App.3d 481, 659 N.E.2d 885 (claim for payment of unused sick time by a firefighter under the terms of a collective bargaining agreement), and *Fowler v. Hudson Foods* (1998), 96 Ohio Misc.2d 19, 708 N.E.2d 792 (claim of age discrimination). Reliance on *DeCrane* is misplaced because once a particular grievance remedy was initiated in *DeCrane,* an alternate remedy was precluded by a provision contained in a collective bargaining agreement between DeCrane's Union and the city of Westlake. In the case *sub judice,* it has not been alleged that remedy preclusion is effected under the terms of a collective bargaining agreement's grievance procedure. Similarly, *Fowler* is easily distinguished be-

---

8. The *Smith* case was certified to the Ohio Supreme Court on the basis of a conflict with the judgment announced in *Hultberg v. Ohio Edison Co., supra.* The issue in conflict is whether Smith was barred from filing her complaint with the trial court pursuant to R.C. 4112.99 because she had previously elected to file an administrative claim pursuant to R.C. 4112.05. See *Smith v. Friendship Village of Dublin, Ohio, Inc.* (2000), 90 Ohio St.3d 1451, 737 N.E.2d 54, 55.

cause the present case does not involve election of remedies involving a claim of age discrimination.

■ Accordingly, Carney did not have to exhaust her administrative remedies prior to filing her action pursuant to R.C. 4112.99 alleging race and retaliation discrimination.

■ In addressing the second sub-argument, that the trial court was bound by the findings and determinations of the OCRC, appellee cites no authority for this proposition of law except to note that, had Carney sought judicial review of the OCRC determinations, "the trial court would have been bound by such findings 'if supported by reliable, probative and substantial evidence on the record and such additional evidence as the court has admitted considered as a whole.'" It is appellee's argument that the trial court should be bound by the OCRC determinations because Carney did not seek judicial review of the OCRC determinations. Since Carney did not have to exhaust her administrative remedies prior to filing the present action in common pleas court, and there are no final determinations from the administrative level of the OCRC which were appealed to common pleas court, it makes no sense for the trial court to apply a standard of judicial review reserved for administrative appeals to common pleas court. Instead, the standard of review is that of summary judgment pursuant to Civ.R. 56. The second sub-argument, and second basis for summary judgment, is without merit as the trial court had subject matter jurisdiction to entertain the action.

We now turn to the third basis for summary judgment, that Carney could not meet her burden of proof in making her claims of race and retaliatory discrimination.

■ In cases involving discriminatory treatment by an employer against an employee, the law engages in an evidentiary burden shifting mechanism between the parties. The first step requires that the employee make a prima facie case of discrimination. *McDonnell Douglas v. Green* (1973), 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668, 677–678; *Texas Dept. of Community Affairs v. Burdine* (1981), 450 U.S. 248, 252–253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207, 215; *St. Mary's Honor Ctr. v. Hicks* (1993), 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407; *Reeves v. Sanderson Plumbing Products, Inc.* (2000), 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105; *Wagner v. Allied Steel & Tractor Co.* (1995), 105 Ohio App.3d 611, 664 N.E.2d 987. As recognized by *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824, 36 L.Ed.2d at 677–678, fn. 13, the prima facie proof required will vary from case to case based on differing factual situations. For example, in order to make a prima facie case for reverse discrimination involving the discharge of an employee, the employee must demonstrate the following:

"(1) [The employee] was a member of a statutorily protected class; (2) he was discharged from his job by the employer; (3) he was qualified for the position; and (4) either he was replaced by a person not belonging to the protected class or his discharge enabled the employer to retain such a person.

"In reverse discrimination cases, the first element has been modified to require the plaintiff to show background circumstances supporting the inference that his employer was the unusual employer who discriminated against nonminority employees. See *Notari v. Denver Water Dept.* (C.A.10, 1992), 971 F.2d 585, 589." *Wagner v. Allied Steel & Tractor Co.*, 105 Ohio App.3d at 614–615, 664 N.E.2d 987, 989.

In the present case involving Carney, the elements of proof for a prima facie case necessarily change due to Carney basing her discrimination not on discharge, but (1) on the employer's refusal to hire her for the position obtained by Frost, and (2) on retaliating against Carney for her having opposed the hiring of Frost and filing administrative claims in defense of her civil rights. Accordingly, the first and third elements of the prima facie case remain the same, but the second and fourth elements must change to reflect the particular facts of Carney's alleged discrimination. For the claim of reverse race discrimination (1) the second element will require Carney to demonstrate that she was not hired for the position obtained by Frost, and (2) the fourth element will require Carney to demonstrate either that the person who was hired (*i.e.*, Frost) was not a member of the protected class (in this case Caucasian) or the nonhiring of Carney enabled the employer to hire a person (Frost) who was not a member of the protected class. To summarize, Carney must demonstrate the following for a prima facie case of reverse race discrimination (1) that background circumstances support the inference that the employer was the unusual employer who discriminated against the majority (in this case Caucasian) employees, (2) that she was not hired for the position obtained by Frost, (3) that she was qualified for the position obtained by Frost, and (4) either that Frost was not a member of the protected class (in this case Caucasian) or that the non-hiring of Carney enabled the employer to hire a person (in this case Frost) who was not a member of the protected class.

The following standard applies for a prima facie case of retaliatory discrimination:

"In order to establish a prima facie case of retaliation under R.C. 4112.02(I), appellant was required to prove the following elements: (1) appellant engaged in protected activity [in this case the filing of claims with the OCRC]; (2) [the employer] knew of appellant's participation in the protected activity; (3) [the employer] engaged in retaliatory conduct; and (4) a causal link exists between the protected activity and the adverse action. *Chandler v. Empire*

*Chem., Inc., Midwest Rubber Custom Mixing Div.* (1994), 99 Ohio App.3d 396, 402, 650 N.E.2d 950 [954]." *Powers v. Pinkerton, Inc.* (Jan. 18, 2001), Cuyahoga App. No. 76333, unreported, 2001 WL 60035.

Once the employee presents evidence of a prima facie case of discrimination, the burden shifts to the employer to "articulate some legitimate nondiscriminatory reason for" the employer's action. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. at 252–253, 101 S.Ct. at 1093, 67 L.Ed.2d at 215. For this showing, it is important to note that "this burden is one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves,* 530 U.S. at 143, 120 S.Ct. at 2106, 147 L.Ed.2d at 117, quoting *St. Mary's Honor Ctr.,* 509 U.S. at 509, 113 S.Ct. at 2748, 125 L.Ed.2d at 417.

If the employer carries its burden, the burden then shifts back to the employee to prove that the proffered nondiscriminatory reasons by the employer are a pretext. *Reeves,* 530 U.S. at 142, 120 S.Ct. at 2106, 147 L.Ed.2d at 116–117. Pretext is established by (1) a direct evidentiary showing that a discriminatory reason more likely motivated the employer or by (2) an indirect evidentiary showing that the employer's explanation is not credible. *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095, 67 L.Ed.2d at 217. To be considered a pretext, the stated nondiscriminatory reason must be shown to be false and that discrimination was the real reason. *Powers,* citing *St. Mary's Honor Ctr.,* 509 U.S. at 510–511, 113 S.Ct. at 2749, 125 L.Ed.2d at 418–419. In other words:

"'Mere conjecture that [the] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment.' *Branson v. Price River Coal Co.* (C.A.10, 1988), 853 F.2d 768, 772. To avoid summary judgment, appellant was required to produce some evidence that Pinkerton's proffered reasons were factually untrue. *Reeves v. Sanderson Plumbing Products, Inc.* (2000), 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105." *Powers,* 2001 WL 60035, at *4.

If the employer has met its burden, the trial court, in determining whether the employer's explanation is a pretext, may "still consider the evidence establishing the plaintiff's prima facie case 'and inferences properly drawn therefrom.'" *Reeves,* 530 U.S. at 143, 120 S.Ct. at 2106, 147 L.Ed.2d at 117, quoting *Burdine.* Moreover, in indirect evidence types of cases, the fact that the trial court rejects the employer's nondiscriminatory explanation does not *compel* the trial court to find for the plaintiff. Instead:

"The ultimate question is whether the employer intentionally discriminated, and proof that 'the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered

reason * * * is correct.' *Id.* at 524 [113 S.Ct. at 2756, 125 L.Ed.2d at 427]. In other words, 'It is not enough * * * to *dis* believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination.' *Id.* at 519 [113 S.Ct. at 2754, 125 L.Ed.2d at 424]." *Reeves,* 530 U.S. at 146–147, 120 S.Ct. at 2108, 147 L.Ed.2d at 119, citing *St. Mary's Honor Ctr.,* 509 U.S. at 519, 524, 113 S.Ct. at 2754, 2756, 125 L.Ed.2d at 424, 427.

Despite the shifting evidentiary burden framework, the following must be remembered:

" '[T]he ultimate *burden* of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff *remains at all times with the plaintiff.*' *Burdine,* 450 U.S. at 253 [101 S.Ct. at 1093, 67 L.Ed.2d at 215]." (Emphasis added.) *Reeves,* 530 U.S. at 143, 120 S.Ct. at 2106, 147 L.Ed.2d at 117.

Applying the foregoing standards to the claim of race discrimination, it is evident that Carney has not demonstrated a prima facie case. While Carney arguably has demonstrated the second, third, and fourth elements of a prima facie case, she has failed to demonstrate the first element (through direct or indirect evidence), which is, that background circumstances suggest that the defendant-appellee-employer is an employer who discriminates against Caucasian employees. Having failed to demonstrate a prima facie case of race discrimination, the trial court did not err in granting summary judgment to the defendant-appellee on this particular claim.

Turning to the claim of retaliatory discrimination, appellant concedes that the appellee's argument that the appellee did not receive notice of the initial OCRC claim for race discrimination until *after* the decision to transfer Carney had been made (in April 1998 by Koenig and Smith), and states that the claim of retaliation "does not lie." Accordingly, Carney has failed to demonstrate a prima facie case for retaliatory discrimination because the second element of that standard (*i.e.,* that the employer knew of the employee's participation in the protected activity of filing the initial OCRC claim of race discrimination) is lacking. Thus, the trial court did not err in granting summary judgment for the defendant-appellee on the claim of retaliatory discrimination.[9]

The final basis for granting summary judgment, that attorney fees could not be awarded in the event that Carney was recovered a judgment on the merits, is

---

9. Appellant argues in support of her retaliation claim that a claim based on the public policy tort exception to the employment at will doctrine could be the basis for a retaliation claim. Unfortunately, this public policy claim was not pled by Carney and is not properly before this court.

moot and need not be addressed by virtue of our determination that summary judgment was properly granted. See App.R. 12(A)(1)(c).

The first assignment of error is overruled. The second assignment of error is affirmed.

The third, and final assignment of error provides the following:

## III

"The trial court erred in failing to allow appellant to submit the affidavit of Barbara Parr."

In this assignment, appellant argues that the trial court should have permitted her to include the Parr's affidavit in opposing the motion for summary judgment. As the affiant, Parr averred that she was certified to teach in the gifted program and that in August 1997 she applied for a position with the gifted program in the District. In that application, Parr, who was employed in Ashtabula County at the time, attached a letter of recommendation prepared by James Rust on April 23, 1997, when Rust was a coordinator of gifted programs at the Ashtabula County Educational Service Center and Parr's supervisor. This affidavit was to be used by Carney to demonstrate that the employer's nondiscriminatory explanation for its racially discriminatory action was a pretext, *i.e.*, that there were suitably certified candidates for the gifted program vacancy apart from Carney. Having concluded above that Carney failed to make a prima facie case of race discrimination, we do not have to reach the issue of pretext. Therefore, Parr's affidavit is immaterial to the summary judgment ruling.

The third assignment of error is overruled.

The judgment is affirmed.

*Judgment affirmed.*

PATRICIA A. BLACKMON and DYKE, JJ., concur.