This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Derrick L. Marbley, appeals from the decision of the Summit County Court of Common Pleas, which granted summary judgment in favor of Appellees, Metaldyne Co. LLC, Metaldyne Lester Precision Die Casting, Inc., Stephanie D. Wagner ("Wagner"), human resources manager, and Robert Stuhldreher ("Stuhldreher"), operations manager. We affirm.
 {¶ 2} On December 19, 2001, Appellant filed a complaint against Appellees alleging race discrimination, fraud, and intentional infliction of emotional distress. The parties then engaged in discovery. Upon completion, Appellees filed a joint motion for summary judgment. Appellant responded in opposition. On December 4, 2002, the trial court entered summary judgment in favor of Appellees. Appellant timely appealed raising three assignments of error which have been consolidated for ease of review.
 ASSIGNMENT OF ERROR I "The trial court erred in granting summary judgment with respect to [Appellant's] claim of race discrimination when genuine issues of material fact existed."
 ASSIGNMENT OF ERROR II "The trial court erred in granting summary judgment by failing to draw all reasonable inferences in favor of Appellant, the non-moving party."
 ASSIGNMENT OF ERROR III "The trial court erred in granting summary judgment with respect to [Appellant's] claim of fraud when genuine issues of material fact existed."
 {¶ 3} In his three assignments of error, Appellant maintains that the trial court erred in granting Appellees' motion for summary judgment. Specifically, Appellant asserts that genuine issues of material fact exist with respect to his claims of race discrimination and fraud. Additionally, Appellant maintains that the trial court failed to draw all reasonable inferences in favor of Appellant, the non-moving party, when granting summary judgment in favor of Appellees. Appellant's assertions lack merit.
 {¶ 4} Pursuant to Civ.R. 56(C), summary judgment is proper if: "(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327. An appellate court reviews a trial court's granting of summary judgment de novo. Grafton v. Ohio Edison Co. (1996),77 Ohio St.3d 102, 105; Klingshirn v. Westview Concrete Corp. (1996),113 Ohio App.3d 178, 180. Any doubt is to be resolved in favor of the non-moving party. Viock v. Stowe-Woodward Co. (1983), 13 Ohio App.3d 7,12.
 {¶ 5} The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and is to identify portions of the record that demonstrate the absence of genuine issues of material fact as to an essential element of the non-moving party's claims. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. The burden will then shift to the non-moving party, to offer "specific facts showing that there is a genuine issue for trial." Id. See, also, Civ.R. 56(E). The non-moving party may not rest on the mere allegations and denials in the pleadings, but must submit some evidentiary material showing a genuine dispute over the material facts. Dresher, 75 Ohio St.3d at 293.
 Race Discrimination {¶ 6} In his first assignment of error, Appellant maintains that genuine issues of material fact exist in regards to his claim of race discrimination. We disagree.
 {¶ 7} Appellant asserts that he was discriminated against by Appellees in violation of R.C. 4112.02(A), which provides: "It shall be an unlawful discriminatory practice: (A) For any employer, because of the race *** of any person, to discharge without just cause, *** or otherwise to discriminate against that person with respect to *** terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." Appellant maintains that he suffered three instances of discrimination: 1) Appellant did not receive various promotions due to the race discriminatory practices of Appellees; 2) Appellant was reprimanded by Appellees based on race discriminatory motives; and 3) Appellant was discharged from his position as a result of race discrimination. We disagree.
 {¶ 8} To succeed in an employment discrimination action, one must prove that either disparate treatment existed or a disparate impact resulted due to an employer's discriminatory ways. Abram v. GreaterCleveland Regional Transit Auth., 8th Dist. No. 80127, 2002-Ohio-2622, at ¶ 41. Disparate treatment occurs when an employer treats an employee less favorably than others based on an unlawful motive, such as race.Abram at ¶ 40, citing Internatl. Bhd. of Teamsters v. United States
(1977), 431 U.S. 324, 335, fn. 15, 52 L.Ed.2d 396. See R.C. 4112.02(A). A "[d]isparate impact results from facially neutral employment practices that have a disproportionately negative effect on certain protected groups and which cannot be justified by business necessity." Abram at ¶ 41, quoting Internatl. Bhd. of Teamsters, 431 U.S. at 335, fn. 15.
 Disparate Treatment {¶ 9} To prevail in a disparate treatment employment discrimination case, a plaintiff must show discriminatory motive. Mauzyv. Kelly Services, Inc. (1996), 75 Ohio St.3d 578, 583. A prima facie case of unlawful discrimination is established by producing either direct or indirect evidence of discrimination. Harold, supra, at 7. See, also,Crosier v. Quikey Mfg. Co., Inc. (Feb. 28, 2001), 9th Dist. No. 19863, at 16-17. Direct evidence includes any nature of evidence that tends to show that the employer, more likely than not, was motivated by a discriminatory intent. Crosier, supra, at 16-17. See, also, Harold, supra, at 7, and Mauzy, 75 Ohio St.3d at 586-87.
 {¶ 10} Absent direct evidence in the record from which a prima facie case of discrimination could be established, appellant may prove discrimination by showing: "(1) that [he] is a member of a protected class; (2) that [he] suffered an adverse employment action; (3) that [he] was qualified for the position; and (4) that comparable employees not within the protected class were treated more favorably." Harold, supra, at {¶ 9} See, also, Crosier, supra, at 25; McDonnell Douglas Corp.v. Green (1973), 411 U.S. 792, 802, 36 L.Ed.2d 668; and Kohmescher v.Kroger Co. (1991), 61 Ohio St.3d 501, syllabus. The function of this four-part test allows a "plaintiff to raise an inference of discriminatory intent indirectly." Mauzy, 75 Ohio St.3d at 583.
 {¶ 11} Once a prima facie case is established, the burden shifts to the employer who must then overcome the presumption of discriminatory intent by producing evidence of a legitimate, nondiscriminatory reason for his actions and practices. Id. at 582. If a nondiscriminatory reason is cited, the plaintiff is then required to show that the given reasons were merely a pretext for unlawful discrimination. Id. However, "[m]ere conjecture that [the] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment."Carney v. Cleveland Hts.-Univ. Hts. City School Dist. (2001),143 Ohio App.3d 415, 429. The plaintiff must produce evidence demonstrating that the employer's stated reasons were factually untrue.Reeves v. Sanderson Plumbimg Prods., Inc. (2000), 530 U.S. 133, 143,147 L.Ed.2d 105. See, also, Carney, 143 Ohio App.3d at 429.
 Disparate Impact {¶ 12} When utilizing the disparate impact approach, a plaintiff need not prove discriminatory motive, as the claim is based on statistical evidence of patterns or practices which result in discrimination. Abram at ¶ 41, citing Internatl. Bhd. of Teamsters,431 U.S. at 335. An employee may prevail if he establishes that the employer has engaged in a specific practice which has excluded from employment members of a protected class. Watson v. Fort Worth Bank Trust (1988), 487 U.S. 977, 994, 101 L.Ed.2d 827. More specifically, it is the plaintiff's burden to show that an adverse effect was caused by the employment practice and to offer "statistical evidence of a kind and degree sufficient to show that the practice in question has caused the [discharge of employees] because of their membership in a protected group." Robinson v. North Olmstead (N.D.Ohio. 1997), Eastern Division No. 1:93CV1203, quoting Watson, 487 U.S. at 994.
 {¶ 13} Once the plaintiff establishes a prima facie case, the burden of production shifts to the employer to produce evidence of a "business justification" for its "neutral" practices. Abram at ¶ 50, citing Wards Cove Packing Co., Inc. v. Atonio (1989), 490 U.S. 642,658, 104 L.Ed.2d 733. However, the burden of persuasion remains with the plaintiff to show that the challenged actions fail to serve the employer's stated business goals. Abram at ¶ 50, citing Wards Cove Packing,490 U.S. at 659-60.
 {¶ 14} In the present case, the trial court drew all reasonable inferences in favor of Appellant, and found that a prima facie cause of action for discrimination had been established. Accordingly, this Court will do the same for purposes of review of the appeal. However, even with the assumption that Appellant has shown a prima facie case of discrimination, his first assignment of error is not well taken. Appellees have offered legitimate reasons for their actions and practices; Appellant has failed to offer evidence demonstrating that the stated reasons were pretextual.
 {¶ 15} The record reveals that Appellant was terminated from his position due to his threatening and intimidating behavior towards a fellow employee while on company property. Appellant's reprimand notice states that he was immediately discharged as a result of a "Group [No.] 5" violation against a fellow employee on November 22, 2000. According to company policy, as provided in the employee handbook, "Group [No.] 5" violations, such as the "threatening or intimidating [of] fellow employees on company property[,]" will result in immediate termination.
 {¶ 16} The evidence indicates that an altercation occurred between Appellant and a fellow employee. The complaint filed states that Appellant "charged" an employee and yelled "suck my dick" and "fuck you" when asked why he did not clean his work area at the end of his shift. Conversely, Appellant maintains that he responded "[he's] not getting shit[,]" and said "F you" only after the employee called him an "asshole." Appellant denies that he acted in a threatening or intimidating manner towards the employee.
 {¶ 17} In regards to Appellant's failed attempts to receive a secondary lead position in June of 1999, Appellee Stuhldreher testified, at his deposition, that Appellant was not chosen because of his work ethic and attitude. He also indicated that he observed Appellant's workplace activities as he did the other employees. Appellee asserted that Appellant was not observed more frequently than others.
 {¶ 18} Additionally, Appellee Stuhldreher stated that he never formally reprimanded Appellant for reading newspapers on the plant floor, but did discuss this problem with Appellant numerous times. Appellee Stuhldreher testified that on one occasion, Appellant ignored his requests to stop reading while on the floor. Appellee Stuhldreher explained that he did not single Appellant out, and has spoken with others, "black or white[,]" about this problem.
 {¶ 19} Appellee Wagner testified that she has never heard Appellee Stuhldreher make any racist comments nor has she received any complaints from employees pertaining to racist remarks from him. Appellant's direct supervisor, Ron O'Neal ("O'Neal"), was also deposed. He stated that he treats all employees alike and indicated that although Appellant was reprimanded for reading magazines during working hours, other employees also received similar warnings and reprimands.
 {¶ 20} Although Appellant expressed his frustration with Appellees, he failed to provide evidence that Appellees' stated reasons for their actions were pretextual. In regards to the various job opportunities, Appellant explained that he received a letter in 1996 indicating that he was not considered for a promotion because he had too many attendance points. Appellant stated that he was informed by Appellee Stuhldreher that he did not receive the secondary lead position, in June of 1999, because of his attitude. With regards to an opening for a grinder position, Appellant explained that he obtained an interview, but received a memorandum indicating that he lacked the two years experience in the proper department as desired. Appellant acknowledged that he received the top rate of pay and transferred to the first shift in his position as a finishing technician, and was awarded a manufacturing technician position in 1997. Appellant stated that he was offered a promotion to the die repair department, that same year, but declined as second and third shift hours were required.
 {¶ 21} Appellant testified that both Appellee Stuhldreher and O'Neal verbally warned him about reading magazines and newspapers on the floor. Appellant stated that he felt he was the only employee warned, but indicated that others may have been warned or reprimanded. Appellant also maintained that he was more closely scrutinized by Appellee Stuhldreher than the other employees. Appellant testified that he would see Appellee Stuhldreher "sneaking around the corner *** [and] would catch him looking, [to] see what [Appellant] [was] doing, looking to see if [his] machine *** [was] clean[.]" However, he remarked that he was unable to recall if Appellee watched others in this manner because he "never paid attention."
 {¶ 22} Lastly, Appellant expressed his frustration with the ways in which Appellees Stuhldreher and Wagner handled his complaints as an employee. Appellant stated that Appellee Stuhldreher did not like him and was "known to make racial slurs[.]" Appellant recalled that on one occasion Appellee Stuhldreher put his hand in Appellant's face and was screaming at him for not doing his job properly. Additionally, Appellant testified that he felt a majority of the black supervisors lost their jobs once Appellee Stuhldreher became a supervisor in 1992. However, he was only able to name two African American individuals, other than himself, who were terminated once Appellee Stuhldreher became a supervisor. Appellant also maintained that Appellee Wagner's actions were discriminatory. He felt that her "unthorough investigation" into his complaint that he was the sole employee verbally reprimanded for reading on the job and her alleged references about a last chance agreement to the "peer review committee" were exemplary of race discrimination.
 {¶ 23} Upon a thorough review of the record, we find that Appellant has failed to produce any evidence that Appellees' stated reasons were pretextual and thus factually untrue as required by Reeves.
Likewise, Appellant has not put forth evidence establishing a disparate impact. Thus, there was no evidence from which the trial court could draw reasonable inferences in favor of Appellant, as he suggests. Accordingly, we find that Appellant has failed to meet his Dresher burden of setting forth the existence of a genuine triable issue of fact. The trial court correctly granted summary judgment to Appellees. Appellant's first and second assignments of error are overruled.
 Fraud {¶ 24} In his third assignment of error, Defendant asserts that genuine issues of material fact exist in regards to his claim of fraud. We disagree.
 {¶ 25} In order to prove fraudulent misrepresentation, a plaintiff must show:
 "(a) a representation ***, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation ***, and (f) a resulting injury proximately caused by the reliance." Cohen v. Lamko, Inc. (1984), 10 Ohio St.3d 167, 169. See, also, Gaines v. Preterm-Cleveland, Inc. (1987), 33 Ohio St.3d 54, 55.
 {¶ 26} We note, however, that a party is unable to maintain an action for fraud where the fraudulent representations were not made directly to him to induce him to act on them in matters affecting his own interests. Hahn v. Wayne County Children Services (May 9, 2001), 9th Dist. No. 00CA0029, at 4, quoting Sooy v. Ross Incineration Servs., Inc.
(Oct. 20, 1999), 9th Dist. No. 98CA007031, at 19. See, Wells v. Cook
(1865), 16 Ohio St. 67, syllabus (holding that plaintiff could not maintain an action for deceit as the representations were not made to induce him to act upon them in any matter affecting his own interests). This Court has stated that "a plaintiff fails to state a valid cause of action [for fraud] when he alleges that a third party relied on misrepresentations made by a defendant and that he suffered injury from that third party's reliance." Hahn, supra, at 4-5, quoting Sooy, supra, at 19 (finding no cause of action in fraud where defendants allegedly made false statements to plaintiff's employer resulting in plaintiff's discharge).
 {¶ 27} In the present case, Appellant alleges two instances of misrepresentation on the part of Appellees: 1) Appellees falsely represented to the "peer review team" that Appellant had entered into a "last chance agreement" with Appellees, and 2) Appellees falsely represented that the "peer review team," rather than the Appellees, would render a final decision regarding Appellant's discharge. Upon review of the record, we find that Appellant has failed to satisfy his Dresher
burden for both of his fraudulent misrepresentation claims.
 {¶ 28} In regards to the "last chance agreement," there is no evidence indicating that representations were made by Appellees to Appellant let alone evidence of a misrepresentation made by Appellees to induce Appellant to act upon it in a matter adversely affecting his own interests. Thus, Appellant failed to state a valid cause of action and summary judgment was appropriately granted. See Hahn, supra, at 4-5, quoting Sooy, supra, at 19. Additionally, in regards to Appellant's second allegation of fraud, Appellant has failed to show that his reliance on a false representation made by Appellees had proximately caused him injury. See Cohen, 10 Ohio St.3d at 169. Assuming without deciding that Appellees falsely represented to Appellant that the "peer review committee" would render the final decision regarding Appellant's job status, in the instant case, Appellees abided by the commttee's final decision. The three person "peer review committee" found that "the decision the Company made [and] their procedures and policies were filed and handled properly," and agreed that the "termination sticks." As Appellees ultimately followed the final decision of the committee, Appellant has failed to show how he was harmed by the alleged misrepresentation that the committee would render the final decision regarding Appellant's job status. Accordingly, the trial did not err in granting Appellees' motion for summary judgment. Appellant's third assignment of error is overruled.
 {¶ 29} Appellant's assignments of error are overruled. The decision of the Summit County Court of Common Pleas is affirmed.
WHITMORE, J. and BATCHELDER, J. CONCUR.