DOAN, Appellant,

v.

SOUTHERN OHIO ADMINISTRATIVE DISTRICT COUNCIL,
INTERNATIONAL UNION OF BRICKLAYERS AND
ALLIED CRAFTWORKERS, et al., Appellees.

[Cite as *Doan v. S. Ohio Adm. Dist. Council, Internatl. Union of Bricklayers
& Allied Craftworkers* (2001), 145 Ohio App.3d 482.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 00AP–1203.

Decided Aug. 21, 2001.

*Law Office of Mowery & Youell, Samuel N. Lillard* and *Elizabeth J. Birch,* for appellant.

*Snyder, Rakay & Spicer* and *Michael A. Ledbetter,* for appellees.

---

PETREE, Judge.

In June 1989, plaintiff, Larry Doan, was elected to the position of secretary-treasurer for the Bricklayers and Allied Craftworkers Local 55 Union located in Columbus, Ohio. At that same time, William Packard, also a fellow union member, was elected to the position of business manager.

Both Packard and plaintiff worked together in the same building, and also served as trustees for the Bricklayers and Allied Craftworkers Local 55 Pension and Health and Welfare Fund. This fund had several employees, including an accounting clerk named Sharon Hall.

In 1992, the International Union of Bricklayers and Allied Craftworkers created defendant, Southern Ohio Administrative District Council of the International Union of Bricklayers and Allied Craftworkers ("Council"). After the creation of the council, plaintiff and William Packard were hired as field representatives. Although they now worked for the council, both kept their office in the same building as Hall.

During the years of 1994 and 1995, Hall filed a charge of discrimination with the Ohio Civil Rights Commission ("commission"), the Equal Employment Opportunities Commission, and a complaint with the Franklin County Court of Common Pleas, alleging that she had been subjected to ongoing sexual harassment by William Packard. During the ensuing litigation and administrative proceedings, plaintiff testified that he had personally witnessed Packard harass Hall and that he had repeatedly notified Packard's superiors of his conduct toward Hall and other female employees.

On November 1996, Hall's charge of discrimination and the lawsuit were settled. Within a few days of this settlement, on November 11, 1996, defendants notified plaintiff that they were terminating his employment. Following his dismissal, plaintiff filed a charge of discrimination with the Ohio Civil Rights Commission. Based upon the allegations set forth in that charge, the commission found probable cause to issue a complaint against defendants for retaliatory discharge. This complaint was administratively heard on September 21, 1998; however, it was dismissed at the conclusion of that hearing.

On November 3, 1999, plaintiff filed a complaint with the Franklin County Court of Common Pleas raising a claim for retaliatory discharge in violation of R.C. 4112.02, R.C. 4112.99, and Section 2000e-3(a), Title 42, U.S.Code. On September 27, 2000, the trial court granted summary judgment to defendants. Plaintiff now appeals raising the following two assignments of error:

"1. The trial court erred in holding that appellant's retaliation claims were barred by the doctrine of collateral estoppel regarding a prior hearing before the Ohio Civil Rights Commission when O.R.C. § 4112.99 provides a supplementary cause of action and when the administrative hearing did not provide a full and fair opportunity for appellant to litigate the legal issue given the fact that appellant is not permitted at the OCRC hearing to subpoena witnesses, to submit evidence, cross-examine witnesses, and appellant's legal counsel is not permitted to participate at the hearing.

"2. The trial court erred in granting defendants-appellees' motion for summary judgment as appellant submitted sufficient evidence demonstrating that the appellee's stated reason for termination was pretextual after establishing a prima facie case of retaliation."

The trial court dismissed plaintiff's claims under the theory of collateral estoppel. In its opinion, the trial court reasoned:

"Formal hearings before the [OCRC] are generally held to be of such judicial nature and to provide sufficient opportunity to litigate the issues. *State ex rel. Republic Steel Corp. v. Ohio Civil Rights Comm.* (1975), 44 Ohio St.2d 178, 339 N.E.2d 658. Procedures for a formal post-complaint hearing by the OCRC include the swearing of witnesses, the taking of testimony, and the keeping of a record. This Court agrees with defendants that the OCRC hearing satisfied the requirements for the application of collateral estoppel, and that rehearing of plaintiff's state law retaliation claim is now barred."

"The doctrine of collateral estoppel is an important element of our legal system. It provides a necessary degree of finality to decisions rendered by our courts." *Superior's Brand Meats, Inc. v. Lindley* (1980), 62 Ohio St.2d 133, 135, 16 O.O.3d 150, 403 N.E.2d 996. Collateral estoppel precludes the relitigation of claims or issues that were either litigated, or could have been litigated, in a prior action. *Scholler v. Scholler* (1984), 10 Ohio St.3d 98, 10 OBR 426, 462 N.E.2d 158. A point of law or a fact that was actually and directly in issue in a preceding action and was there passed upon and determined by a court of competent jurisdiction may not later be drawn into question in a subsequent action between the same parties. *Id.* See, also, *Goodson v. McDonough Power Equip., Inc.* (1983), 2 Ohio St.3d 193, 2 OBR 732, 443 N.E.2d 978.

While collateral estoppel principally applies to judicial proceedings, it can in some instances apply as the result of administrative proceedings. *Superior's Brand, supra.* "When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply [collateral estoppel] to enforce repose." *United States v. Utah Constr. & Mining Co.* (1966), 384 U.S. 394, 422, 86 S.Ct. 1545, 16 L.Ed.2d 642. Thus, in order to invoke the doctrine of collateral estoppel, both the parties and issues presented in the first proceeding must be the same as those in the subsequent proceeding. *Scholler, supra,* citing *Jacobs v. Teledyne, Inc.* (1988), 39 Ohio St.3d 168, 529 N.E.2d 1255.

In this instance, we cannot find that plaintiff had a fair and full opportunity to litigate the issues raised in his complaint. Although plaintiff was permitted to file a charge with the commission, he was not permitted to commence an investigation, to direct or participate in directing an investigation, or to determine the existence of probable cause, nor did he have the ability to draft, file, or amend a complaint against defendants, as each of these functions lies within the

exclusive purview of the commission. See Ohio Adm.Code 4112–3–03; 4112–3–05(A) and (F); R.C. 4112.04 and 4112.05.

Plaintiff also had no right to directly participate in presenting his claims to the commission. Although plaintiff was allowed to have counsel accompany him to the commission hearings, counsel was not allowed to examine or cross-examine witnesses, lodge objections, or otherwise directly participate in advocating plaintiff's rights. Ohio Adm.Code 4112–3–07. Further, only the commission and defendants were allowed to conduct discovery. Ohio Adm.Code 4112–3–12 and 4112–3–13. Stated simply, plaintiff lacked the ability to have counsel of his choice act as his representative and advocate before the commission.

In the proceedings before the commission, plaintiff was designated as a "complainant," a party who could file a charge of discrimination and testify if called, but who could not fully participate in the investigation of the charge, the issuance of a complaint, conduct discovery, present evidence, or advocate his rights. Therefore, the trial court erred when it denied plaintiff his day in court. Plaintiff's first assignment of error is well taken.

In his second assignment of error, plaintiff argues that the trial court incorrectly found that he had failed to come forward with evidence sufficient to create a material issue of fact as to whether the defendants' articulated basis for his termination was in fact a pretext for impermissible discrimination. We agree.

■ The narrow question that we must decide on reviewing the grant or denial of a motion for summary judgment is whether there are any genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law. The standard for granting summary judgment is contained in Civ.R. 56(C), which provides:

"* * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * *"

■■ A motion for summary judgment requires the moving party to set forth the legal and factual basis supporting the motion. To do so, the moving party must identify portions in the record that demonstrate the absence of a genuine issue of material fact. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292, 662 N.E.2d 264. Any party moving for summary judgment must satisfy a three-part inquiry showing (1) that there is no genuine issue as to any material fact; (2) that the party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, which conclusion is adverse to the party against

whom the motion for summary judgment is made. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46.

■ According to the Ohio Supreme Court, federal case law interpreting and applying Title VII is generally applicable to claims brought pursuant to R.C. 4112.02. *Genaro v. Cent. Transport, Inc.* (1999), 84 Ohio St.3d 293, 295–298, 703 N.E.2d 782; *Little Forest Med. Ctr. of Akron v. Ohio Civ. Rights Comm.* (1991), 61 Ohio St.3d 607, 609–610, 575 N.E.2d 1164. Pursuant to *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668, plaintiff has the initial burden of establishing a prima-facie case of discrimination. In this case, he may satisfy this burden by showing that (1) he engaged in a protected activity, (2) defendants knew of his participation in the protected activity, and (3) the retaliatory action followed the participation in the protected activity in a manner sufficient to warrant an inference of retaliatory motivation. *Neal v. Hamilton Cty.* (1993), 87 Ohio App.3d 670, 622 N.E.2d 1130, jurisdictional motion overruled in (1993), 67 Ohio St.3d 1481, 620 N.E.2d 854.

■ Once the plaintiff has established a prima-facie case of discrimination, the burden shifts to the defendant who must come forward with a facially legitimate reason for the termination. Finally, if the defendant has come forward with a facially legitimate reason, the burden shifts back to the plaintiff to afford him an opportunity to demonstrate that the reason for the discharge is pretextual. *Green, supra.* See, also, *Texas Dept. of Community Affairs v. Burdine* (1981), 450 U.S. 248, 255–256, 101 S.Ct. 1089, 67 L.Ed.2d 207.

■ In this case, only the third element of plaintiff's prima-facie case is contested. Defendants argue that the plaintiff and Packard did not like each other, and that it was this dislike that prompted defendants to terminate both of them. Defendants argue that the hostility and tension between the two was common knowledge and that it was complaints regarding the inability of the two to work together that prompted their dismissal. Defendants point to deposition testimony of record tending to show that plaintiff did not "get along" with Packard, that there was animosity between the two, and that the two each complained that the other interfered with his ability to carry out his duties.

In response, plaintiff argues that he was terminated on the very same day as Packard, and only a few days after Hall's harassment suit was settled. Plaintiff also points out that he had never been disciplined or counseled regarding his job performance, and that defendants had never terminated any other field representative. Finally, plaintiff contends that when asked why he was being terminated, the director of the council, William Nix, responded that it was "over that bullshit in Local 55."

As the moving party, defendants have the burden of showing conclusively that there exists no genuine issue as to a material fact, and the evidence together with all inferences to be drawn therefrom must be read in the light most favorable to the party opposing the motion. *Adickes v. Kress & Co.* (1969), 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142. During the course of our review, we have been guided by the principle that "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus. The underlying reason for deference is that the trier of fact is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and to use these observations in weighing the credibility of the proffered testimony. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 461 N.E.2d 1273.

Although it is entirely possible that a jury could consider the evidence of this case and conclude that plaintiff's termination was not motivated by retaliatory animus, construing the evidence most favorably to the plaintiff, we are unable to find that reasonable minds could reach only that conclusion. Indeed, defendants' argument that plaintiff's termination was justified on the basis that he was unable to work with the harasser in this case could easily be used to justify the firing of a harasser and his or her victim for the same reason. Accordingly, plaintiff's second assignment of error is well taken.

For the foregoing reasons, both of plaintiff's assignments of error are sustained, the judgment of the Franklin County Court of Common Pleas is reversed, and this cause is remanded to that court for further proceedings in accordance with law, consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

LAZARUS and DESHLER, JJ., concur.