Judgment reversed<br/>and cause remanded.

SHAW, P.J., and THOMAS F. BRYANT, J., concur.

**WILSON, Appellant,**

v.

**SEMCO, INC. Appellee.**

[Cite as *Wilson v. Semco, Inc.,* 152 Ohio App.3d 75, 2002-Ohio-4695.]

Court of Appeals of Ohio,
Third District, Marion County.

No. 9–02–18.

Decided Sept. 9, 2002.

---

10. *Kel–Keef,* 316 Ill.App.3d at 320, 250 Ill.Dec. 308, 738 N.E.2d 524.

Michael J. Muldoon, for appellant.

Paul W. Leithart II, for appellee.

WALTERS, Judge.

{¶ 1} Appellant, Kenneth Wilson ("Wilson"), appeals from a Marion County Common Pleas Court judgment granting summary judgment in favor of and dismissing claims for wrongful retaliatory discharge against his former employer, appellee, Semco, Inc ("Semco"). On appeal, Wilson argues that the trial court

erred in applying the doctrines of exhaustion of administrative remedies and res judicata to dismiss his action. We hold that neither the filing of an unlawful discriminatory practice charge with the Ohio Civil Rights Commission under R.C. 4112.05(B)(1) nor the failure to pursue judicial or administrative review of a corresponding order will preclude a person alleging handicap discrimination from instituting an independent civil action under R.C. 4123.90. We further find that under the facts herein, the principles of issue or claim preclusion will not operate to preclude Wilson's retaliatory discharge claim.

{¶ 2} Wilson was employed by Semco from 1990 until December 1997, when he was terminated. During the seven years of his employment, Wilson was injured on several occasions, filing ten separate claims for workers' compensation benefits. At the time of his termination, Wilson was apparently pursuing claim No. 97–322052.

{¶ 3} On February 12, 1998, Wilson submitted an affidavit with the Ohio Civil Rights Commission ("OCRC"), alleging that he had been discharged as a result of his disability, i.e., fused joints of the thumb. After investigating the charge, the OCRC concluded that evidence did not substantiate that he had been terminated due to the disability but had instead been "terminated due to excessive absenteeism and because of his attitude which caused morale problems among other employees." Wilson did not request reconsideration of the determination or petition for judicial review of the order.

{¶ 4} In addition, on February 11, 1998, Wilson sent Semco a letter declaring his intention to sue under R.C 4123.90, and on June 15, 1998, filed suit asserting that he had been wrongfully discharged because he was pursuing his rights under the Workers' Compensation Act of Ohio. In both his letter of intent and complaint, Wilson mentioned only one workers' compensation claim, No. 97–322052. However, when deposed, Wilson indicated that he had stopped pursuing claim No. 97–322052 but was continuing to pursue other claims.

{¶ 5} Wilson subsequently dismissed his complaint without prejudice pursuant to Civ.R. 41(A)(1). On January 10, 2000, Wilson refiled the wrongful discharge action pursuant to R.C. 2305.19, the savings statute. However, in his new complaint, Wilson included the nine workers' compensation claims that were not included among the allegations in his letter of intent or initial complaint.

{¶ 6} Semco moved for summary judgment, arguing that Wilson "has actually pled nine new causes of action[,] since his first case involved a claim under one injury, while this case involves [claims regarding] ten separate incidents." In June 2000, the trial court granted summary judgment to Semco, stating: "[Semco] has correctly pointed out that it was not given timely notice of the plaintiff's pursuit of nine of these workers' compensation claims. [Wilson] is, therefore,

statutorily barred from bringing any claim related to those injuries and to those workers' compensation claims."

{¶ 7}   Wilson appealed, and upon review, we held that the initial written notice to Semco was effective notice as to claimant's refiled complaint for retaliatory discharge, which referred to the nine additional workers' compensation claims the claimant had filed before his discharge.[1]   Accordingly, the matter was remanded to the trial court for further proceedings.

{¶ 8}   In November 2001, Semco filed a second motion for summary judgment, arguing that excessive absenteeism is a legitimate basis for termination, that the doctrine of failure to exhaust administrative remedies barred the instant action because Wilson had failed to seek administrative or judicial review of the OCRC order, and that the OCRC determination operated to preclude relitigation of issues surrounding the basis for Wilson's discharge under principles of res judicata.   The trial court granted Semco's motion on February 14, 2001, concluding that "[t]his court will not be put in the position of re-litigating the same issues which * * * [Wilson] pursued before the Ohio Civil Rights Commission.   Res judicata is a legitimate defense in the circumstances where a party has failed to exhaust administrative remedies when non-constitutional issues are at stake."

{¶ 9}   Wilson now appeals and presents the following single assignment of error for our review: "The trial court erred in granting summary judgment pursuant to Ohio Civil Procedure Rule 56 when there are clearly genuine issues as to material facts, and the ruling that the issue before the court was 'res judicata' is a violation of plaintiff's due process rights, as the plaintiff is entitled to have his case heard by the trier of fact."

### Summary Judgment Standard

{¶ 10}   It is well established under Ohio law that a court may not grant a motion for summary judgment unless the record demonstrates (1) that no genuine issue of material fact remains to be litigated;  (2) that the moving party is entitled to judgment as a matter of law;  and (3) that, after construing the evidence most strongly in the nonmovant's favor, reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made.[2]   In ruling on a summary judgment motion, the trial court is not permitted to weigh evidence or choose among reasonable inferences; rather, the court must evaluate evidence, taking all permissible inferences and resolving questions of credibility in favor of the

---

1.   *Wilson v. Semco, Inc.* (2000), 140 Ohio App.3d 488, 492–494, 748 N.E.2d 111.

2.   Civ.R. 56(C);  *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 686–687, 653 N.E.2d 1196.

nonmovant.[3] Even the inferences to be drawn from the underlying facts contained in the evidentiary materials, such as affidavits and depositions, must be construed in a light most favorable to the adverse party.[4] Appellate review of summary judgment determinations is conducted on a de novo basis[5]; therefore, this court considers the motion independently and without deference to the trial court's findings.[6] Accordingly, the appellate standard for summary judgment is the same as that of the trial court.[7]

### Exhaustion of Administrative Remedies

{¶ 11} As mentioned previously, Semco maintains that the doctrine of exhaustion of administrative remedies operates to preclude the instant action because Wilson failed to seek reconsideration or judicial review of the OCRC determination prior to initiating his wrongful discharge claim. Exhaustion of remedies is an affirmative defense that is waived if not timely asserted and maintained.[8] In this instance, Semco did not plead exhaustion as an affirmative defense and failed to raise the issue in its first summary judgment motion, waiting until after the matter had been remanded upon appeal to raise the issue in its second summary judgment motion. By failing to timely plead or raise the defense, Semco has waived the defense.

{¶ 12} Additionally, in *Smith v. Friendship Village of Dublin, Ohio, Inc.*,[9] the Ohio Supreme Court held that "in light of our obligation to liberally construe R.C. Chapter 4112, R.C. Chapter 4112's goal of providing 'a variety of remedies,' and in the absence of an express legislative expression imposing an election requirement, we hold that the filing of an unlawful discriminatory practice charge with the Ohio Civil Rights Commission under R.C. 4112.05(B)(1) does not preclude a person alleging handicap discrimination from instituting an independent civil

---

3. *Jacobs v. Racevskis* (1995), 105 Ohio App.3d 1, 7, 663 N.E.2d 653.

4. *Hannah v. Dayton Power & Light Co.* (1998), 82 Ohio St.3d 482, 485, 696 N.E.2d 1044.

5. *Griner v. Minster Bd. of Edn.* (1998), 128 Ohio App.3d 425, 430, 715 N.E.2d 226.

6. *J.A. Industries, Inc. v. All Am. Plastics, Inc.* (1999), 133 Ohio App.3d 76, 82, 726 N.E.2d 1066.

7. See *Midwest Specialties, Inc. v. Firestone Tire & Rubber Co.* (1988), 42 Ohio App.3d 6, 8, 536 N.E.2d 411.

8. *Jones v. Chagrin Falls* (1997), 77 Ohio St.3d 456, 462, 674 N.E.2d 1388.

9. *Smith v. Friendship Village of Dublin, Ohio, Inc.* (2001), 92 Ohio St.3d 503, 751 N.E.2d 1010.

action under R.C. 4112.99."[10]   In doing so, the Court abrogated *Hultberg v. Ohio Edison Company*,[11] wherein an appellate court held that a party's abandonment of an administrative appeal from an OCRC order forever barred the party from raising an independent civil handicap discrimination claim.

{¶ 13}   In determining the General Assembly's intent, the starting point in the construction of a legislative enactment is the text of the statute itself.[12] "By its terms, R.C. 4123.90 does not make the remedy provided therein an exclusive remedy."[13]   The plain language of neither R.C. 4112.05 nor R.C. 4123.90 requires a plaintiff alleging handicap discrimination or retaliatory discharge to elect between remedies.   Nor are there other statutory provisions requiring such an election.   Therefore, considering R.C. Chapter 4112's goal of providing a variety of remedies, we hold that neither the filing of an unlawful discriminatory practice charge with the Ohio Civil Rights Commission under R.C. 4112.05(B)(1) nor the failure to pursue judicial or administrative review of a corresponding order will preclude a person alleging handicap discrimination from instituting an independent civil action for retaliatory discharge under R.C. 4123.90.[14]

{¶ 14}   Accordingly, we must proceed to determine whether principles of res judicata or collateral estoppel operate to preclude Wilson's retaliatory discharge claim herein.

### *Issue and Claim Preclusion*

{¶ 15}   The term "res judicata" has several different meanings, depending on the context in which the term is used.   Res judicata has been used in a broad way to include both major aspects of former adjudication, encompassing claim preclusion and issue preclusion.   In order to give more consistency to the use of terms in this area of the law, the accepted current usage of res judicata falls within this broad sense.   Authorities now generally prefer the use of the term "claim preclusion" to refer to what in the past has been the narrow use of res judicata, and also prefer the use of the term "issue preclusion" to refer to what in the past has been called collateral estoppel.[15]   In this instance, although

---

10.   Id. at 507, 751 N.E.2d 1010.

11.   *Hultberg v. Ohio Edison Co.* (1996), 116 Ohio App.3d 130, 134, 687 N.E.2d 12.

12.   *Smith*, 92 Ohio St.3d at 506, 751 N.E.2d 1010.

13.   *Balyint v. Arkansas Best Freight Sys., Inc.* (1985), 18 Ohio St.3d 126, 130, 18 OBR 188, 480 N.E.2d 417.

14.   Cf. *Smith*, supra.

15.   See *Holzemer v. Urbanski* (1999), 86 Ohio St.3d 129, 133, 712 N.E.2d 713, citing 18 Wright, Miller & Cooper, Federal Practice & Procedure (1981 & Supp.1999), Chapter 13, Section 4402, at 6–11.

the trial court employed the term "res judicata," it stated that it "[would] not be put in the position of re-litigating the same *issues* which [Wilson] pursued before the Ohio Civil Rights Commission." We, therefore, need to proceed to address the individual application of the separate concepts of claim and issue preclusion in turn.

{¶ 16} We begin our analysis by discussing the general application of principles of res judicata and collateral estoppel to administrative proceedings. The principles of res judicata and collateral estoppel are applicable to such proceedings where the proceedings were judicial in nature, factual disputes resolved were clearly relevant to issues properly before it, and both parties had a full and fair opportunity to argue their version of the facts and an opportunity to seek out review of any adverse findings.[16] The weight of authority in Ohio indicates that proceedings before the OCRC are generally held to be of such a judicial nature as to provide sufficient opportunity to litigate the issues presented therein.[17] As discussed above, however, the filing of a complaint with the OCRC does not preclude the institution of a subsequent independent civil handicap discrimination claim: a claim predicated upon identical parties, issues, and facts. Therefore, an OCRC complaint cannot operate as res judicata upon Wilson's retaliatory discharge claim. Accordingly, we turn our attention to application of issue preclusion.

{¶ 17} In order to successfully assert collateral estoppel, a party must establish: "(1) The party against whom estoppel is sought was a party or in privity with a party to the prior action; (2) There was a final judgment on the merits in the previous case after a full and fair opportunity to litigate the issue; (3) The issue must have been admitted or actually tried and decided and must be necessary to the final judgment; and (4) The issue must have been identical to the issue involved in the prior suit."[18]

{¶ 18} Upon review and consideration of the OCRC proceedings and determination, we conclude that collateral estoppel cannot operate to preclude litigation

---

16. *Consumers' Counsel v. Pub. Util. Comm.* (1985), 16 Ohio St.3d 9, 10, 16 OBR 361, 475 N.E.2d 782.

17. See, e.g., *Merkel v. Compass Steel, Inc.* (Jan. 16, 1991), Hamilton App. No. C–890566, 1991 WL 3231, citing *State ex rel. Republic Steel Corp. v. Ohio Civ. Rights Comm.* (1975), 44 Ohio St.2d 178, 73 O.O.2d 478, 339 N.E.2d 658. Compare *Doan v. Ohio Adm. Dist. Council, Internatl. Union of Bricklayers & Allied Craftworkers* (2001), 145 Ohio App.3d 482, 486–487, 763 N.E.2d 639.

18. *Monahan v. Eagle Picher Industries, Inc.* (1984), 21 Ohio App.3d 179, 180–181, 21 OBR 191, 486 N.E.2d 1165.

of the issue of whether Wilson was discharged for pursuing his rights under the Workers' Compensation Act of Ohio. The focus and nature of the inquiries and issues involved in an unlawful discriminatory practice charge before the OCRC and a civil complaint for retaliatory discharge due to the pursuit of workers' compensation rights are different. While the OCRC is given statutory authority to determine whether an employment action constituted handicap or other forms of discrimination,[19] in order to decide that Wilson was not discharged by Semco due to his disability, it was not necessary for the OCRC to conclude that Wilson was discharged for excessive absenteeism or because his attitude caused morale problems with other workers.[20] Wilson's success in the matter was dependent upon a factual determination of whether he was discharged as a result of his alleged fused thumb joints disability. Therefore, because the OCRC determination did not collaterally estop Wilson from proceeding on a retaliatory discharge claim under R.C. 4123.90, the trial court erred when it rendered summary judgment in favor of Semco. Accordingly, Wilson's assignment of error is sustained.

{¶ 19} Having found error prejudicial to the appellant herein in the particulars assigned and argued, the judgment of the Marion County Common Pleas court is hereby reversed, and the cause is remanded for further proceedings in accordance with this opinion.

Judgment reversed
and cause remanded.

THOMAS F. BRYANT and HADLEY, JJ., concur.

---

19. *Whitehall ex rel. Wolfe v. Ohio Civ. Rights Comm.* (1995), 74 Ohio St.3d 120, 122, 656 N.E.2d 684.

20. *Stevenson v. Pace Engineering, Inc.* (Nov. 4, 1994), Lake App. No. 93–L–165, 1994 WL 642471; cf. *Whitehall,* supra.