NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0348n.06

No. 10-4011

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

*May 23, 2011*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| ROBERT EVANS, father and legal guardian of L.E., a minor; TONYA RIFFE, mother and legal guardian of B.R., a minor, | ) ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO |
| Plaintiffs-Appellees | ) ) | |
| v. | ) ) | |
| BOARD OF EDUCATION SOUTHWESTERN CITY SCHOOL DISTRICT; PAUL SMATHERS, Principal, | ) ) ) | **OPINION** |
| Defendants-Appellants. | ) ) ) | |

**BEFORE: MCKEAGUE and WHITE, Circuit Judges, and ZOUHARY,**[*] **District Judge**

**HELENE N. WHITE, Circuit Judge.** Paul Smathers (Smathers), the principal of an Ohio middle school, appeals the district court's denial of his motion for summary judgment based on qualified immunity with respect to two due process claims premised on 42 U.S.C. § 1983. Smathers argues that the district court erred in failing to apply res judicata or collateral estoppel to findings made at a school suspension hearing, and that these administrative findings preclude L.E., a former student, from showing a constitutional violation. We **AFFIRM** because we find that neither res judicata nor collateral estoppel applies to bar L.E. from asserting these claims in federal court.

_____

[*]The Honorable Jack Zouhary, United States District Judge for the Northern District of Ohio, sitting by designation.

-1-

**I.**

The district court summarized the background of this case as follows:

### 1. The 2007-2008 School Year

In August 2007, L.E. and B.R. were twelve-year old girls entering seventh grade at Finland [Middle School (Finland)]. Both L.E. and B.R. were transported to and from Finland by school bus. Students riding the school bus were given assigned seats; boys were assigned seats in the front of the bus and girls were assigned seats in the back.

Not long after the start of the school year in August, M.C., a boy who also attended Finland and rode the same school bus as L.E. and B.R., began making comments to the girls on the bus, most often during the ride home from school in the afternoons. These comments were sexual in nature and included asking girls to show him their breasts and to have sex. According to L.E. and B.R., while M.C. initially made these comments in general [to] all of the females on the bus, he later began to focus his comments on L.E. and B.R.[1] B.R. stated in her deposition that M.C.'s behavior intensified from verbal comments to physical contact. According to B.R., M.C. would grab her and try to push her into his bus seat on multiple occasions each week. M.C. would also hit B.R. on her buttocks or attempt to grab at her chest. M.C. acted similarly towards L.E.

### a. The October 2007 Incident

One afternoon in October 2007, both B.R. and L.E. allege that M.C. physically assaulted them. B.R. states that while she was walking to the front of the bus to dispose of some paper, M.C. reached out, grabbed B.R.'s pants, pulled them down, and exposed her underwear. This incident was apparently witnessed by other students on the bus, who laughed.

On that same afternoon, L.E. alleges that she was sitting in her seat when M.C. and his friend, B.B., came to her assigned seat. According to L.E., while B.B. grabbed her arms and pinned them down, M.C. pulled L.E.'s shirt down, and exposed one breast. Neither B.R. or L.E. reported these incidents to the bus driver.

---

[1]"In their Response to Defendants' Motion for Summary Judgment, Plaintiffs[] posit that 'M.C. targeted L.E. and B.R. because the girls were 'more developed' than their classmates.'"

### b. Reports to School Officials

The next day at school, however, L.E. and B.R. went to see Diana McDaniel ([]McDaniel[]), the guidance counselor at Finland, and reported the incidents that had taken place on the school bus the previous afternoon. L.E. and B.R. state that after hearing their version of the events, McDaniel asked both girls to write a statement. McDaniel also indicated that the girls should not be treated in that manner and that the incidents would be taken care of. L.E. and B.R. claim that, upon receiving their written statements, McDaniel threw them in the trash. Defendants [Board of Education Southwestern City School District (Southwestern) and Smathers (collectively, defendants)] claim that L.E. and B.R. reported only that they had been subjected to inappropriate verbal comments, that nothing physical had happened, and that McDaniel never would have thrown the girls' written statements in the trash.

In the notes obtained by Plaintiffs [Robert Evans (Evans) and Tonya Riffe (Riffe) (collectively, plaintiffs)] from McDaniel, taken after these incidents, McDaniel writes that she had both B.R. and L.E. write a statement.[2] According to McDaniel's notes, she and [Bradley] Adams [(Adams)], Finland's assistant principal, informed M.C. and another boy of the school's zero tolerance policy for the type of comments that M.C. had allegedly been making to B.R. and L.E. The following day, McDaniel's notes document that "M.C. did not listen & this day he tried to rub against legs (LE? or BR?) as he walked down the aisle." At this point, McDaniel notes that she took M.C. to Smathers, . . . shared with Smathers that M.C. "isn't getting the message" and "filled Mr. S. [i]n on what had transpired & left."

Plaintiffs[] also assert that Smathers was again made aware of the ongoing harassment of L.E. and B.R. on the bus when B.R., at Riffe's urging, made a report directly to Smathers [some time] after the girls had met with McDaniel. Riffe has stated that, after meeting with her daughter, Smathers called her [and informed her that the boys whom L.E. and B.R. had reported would be suspended]. During the hearing conducted by Southwestern pursuant to Evans's appeal of L.E.'s suspension, Smathers denied ever having spoken with Riffe or M.C. about any investigation into harassment. At his deposition, however, Smathers admitted calling Riffe.[3]

---

[2]"McDaniel 'has no explanation as to why the statements disappeared' and testified that she turned the statements over the school secretary who was responsible for maintaining Finland's discipline files."

[3]"Smathers's testimony at the hearing on the appeal of L.E.'s suspension is also contradicted by the testimony of A.G. A.G., another student at Finland, testified that around January 2008, after

### c. The May 2008 Incident

On May 8, 2008, Plaintiffs allege that L.E. was sexually assaulted by M.C. while riding the bus home from school. On May 9, 2008, after another teacher saw her crying in the lunch room and told her to go to the office, L.E. reported the incident and wrote the following statement:

> On May 8, 2008 I was sitting in the last seat on the bus (#170) and [M.C.] came back to the back of the bus and sat down in my seat. When he sat down he asked if he could see my breast and I said no like always. Then he stuck his hand up my shirt and I didn't say anything. So when we were on Frank Rd. at the light and he asked me to give him head and I said no then he said "thats (sic) gay." Then after that he took my hand and put it on the outside of his shorts and said is it big enough for me then I said nothing. After that he took my hand and put it on the inside of his pants after that he pulled it and forced my head down there and after about 5 sec. I picked my head up and said "now what" and he put his hand on my head again and forced me down there again. After all this he got of (sic) the bus and [C.M.] said did you give [M.C.] head and I said yes.

Smathers states that L.E. was reluctant to come forward and that she was brought to the office by a teacher. After speaking with L.E., Smathers called the police and L.E.'s parents. Smathers also called M.C. into the school office and called M.C.'s mother.

After interviewing other student witnesses, Smathers suspended both L.E. and M.C. for five days, concluding that the students had engaged in some consensual sexual activities and caused a disruption of school. Criminal charges were filed against M.C. and M.C. [pleaded] guilty to an attempted assault charge. L.E.'s parents took her to Jennifer Dorn, M.Ed., L.P.C.C. [(Dorn)], to begin counseling and therapy. Ms. Dorn concluded that L.E. suffers from Post-Traumatic Stress Disorder.

---

winter vacation, she was called into the school office, where Smathers, with Adams present, questioned her as to whether she had witnessed anyone touch B.R. or L.E. inappropriately on the bus."

### d. The Suspension Appeal Hearing

On May 12, 2008, Smathers completed a Notice of Intent to Suspend L.E., pursuant to which L.E. was suspended from school until May 19, 2009. After receiving [the] Notice of Intent to Suspend, L.E.'s parents . . . appealed Smathers's decision to Southwestern. On May 28, 2008, a suspension appeal hearing was held. After the hearing, Southwestern's designated hearing officer, Janice Collette [(Collette)], made certain findings of fact. On June 3, 2008, L.E.'s parents were advised of these findings and of the decision to affirm L.E.'s suspension in a letter. After L.E.'s suspension, there were approximately three weeks remaining in the school year. No further interaction between M.C. and L.E. occurred during this time.

### 2. The 2008-2009 School Year

L.E. reports that from the beginning of her eighth grade year she was subjected to repeated instances of sexual innuendo by fellow students. In October 2008, L.E. and C.B., another girl, reported to McDaniel that K.T., a male classmate, was touching them inappropriately and making sexually charged comments. K.T. was suspended as a result of this behavior.

Defendants report a different version of these events:

> L.E. claims that a different boy, K.T. began making comments to her about her chest and that he pinched another student, and poked her with a pencil. As was typical with L.E., she did not report it to anyone. On October 2, 2008[,] L.E. was in the auditorium in a "Vikings" meeting which was a meeting with all eighth grade students. K.T. made some additional remarks to her friend C.B., and L.E. told K.T. to shut up. It was eventually reported to teacher Ms. Ison, who took her to the office, and the incident was fully investigated by Assistant Principal Adams. K.T. also filed a complaint back against L.E., alleging inappropriate touching and comments. Mr. Adams investigated the incident, found K.T.'s version not credible and suspended him for his actions against L.E. and C.[B]. . . .

On August 18, 2008, plaintiffs filed suit on behalf of L.E. and B.R. against Southwestern,

Smathers, and Joyce Malainy (Malainy), the director of secondary education for Southwestern City

Schools, alleging discrimination and retaliation under Title IX and violations of L.E. and B.R.'s right to equal protection of the laws pursuant to 20 U.S.C. § 1681(a) and 42 U.S.C. § 1983.

Plaintiffs filed an amended complaint on May 8, 2009 and an agreed second amended complaint on December 30, 2009. Pursuant to the latter filing, the only defendants left in the suit were Southwestern and Smathers. Plaintiffs alleged the following claims against defendants: (1) discrimination by Southwestern in violation of Title IX; (2) retaliation by Southwestern in violation of Title IX; and (3) constitutional violations of equal protection and due process. Additionally, Evans alleged the following supplemental claims against defendants: (1) violation of Title IX by Southwestern due to a failure to take action during the 2008-2009 school year given the incidents of the previous school year; (2) constitutional violations of equal protection and due process; (3) intentional or reckless infliction of severe emotional distress; and (4) wanton misconduct.

On December 31, 2009, defendants filed a motion for summary judgment on all claims. Pursuant to the district court's opinion and order, issued July 20, 2010, the following claims remained against Southwestern: (1) plaintiffs' first claim for discrimination under Title IX; (2) plaintiffs' second claim for retaliation under Title IX; (3) Evans's first supplemental claim for violations of Title IX during the 2008-2009 school year; and (4) Evans's fourth supplemental claim for wanton misconduct. The following claims remained against Smathers: (1) the due process component of plaintiffs' third claim under § 1983; (2) the due process component of Evans's second supplemental claim under § 1983; (3) Evans's third supplemental claim for intentional or reckless infliction of emotional distress; and (4) Evans's fourth supplemental claim for wanton misconduct.

Additionally, the district court determined that Smathers was not entitled to qualified immunity with respect to the due process components of the remaining § 1983 claims.  A timely appeal was filed.

## II.

Defendants' sole, narrow argument on appeal is that res judicata or collateral estoppel applies to the findings of fact made at L.E.'s suspension hearing and that these findings foreclose plaintiffs' ability to show that L.E.'s constitutional rights were violated.  Defendants do not argue that plaintiffs have failed to satisfy the remaining requirements of the qualified immunity test.[4]

## A.

As an initial matter, plaintiffs assert that we do not have jurisdiction to consider defendants' appeal, as the issue whether the district court improperly declined to give preclusive effect to the findings of fact made at L.E.'s suspension hearing cannot be presented to this court on interlocutory

---

[4]"Government officials who perform discretionary functions are generally protected from liability for civil damages as long as their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Sallier v. Brooks*, 343 F.3d 868, 878 (6th Cir. 2003) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Because such a decision solely involves a question of law, we review de novo a district court's denial of qualified immunity. *Siggers-El v. Barlow*, 412 F.3d 693, 699 (6th Cir. 2005).

We follow a three-step analysis when reviewing a district court's decision concerning qualified immunity. *See Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003). First, we evaluate whether the facts demonstrate that a constitutional violation has occurred. *Holzemer v. City of Memphis*, 621 F.3d 512, 519 (6th Cir. 2010). Second, we determine "whether the violation involved a clearly established constitutional right of which a reasonable person would have known." *Id.* (citations omitted). Third, we consider "whether the plaintiff has offered sufficient evidence 'to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.'" *Id.* (citations omitted). "We are not bound to follow the sequence of this inquiry." *Id.* While conducting its review, we view the facts in the light most favorable to the plaintiff. *Siggers-El*, 412 F.3d at 699.

review.  However, defendants' argument regarding the application of res judicata or collateral estoppel is not a separate issue, but rather is part of their overall claim that plaintiffs cannot show that L.E.'s constitutional or statutory rights were violated.  We have routinely analyzed the applicability of res judicata or collateral estoppel in determining the propriety of a denial of qualified immunity.  *See Brindley v. Best*, 192 F.3d 525, 530 (6th Cir. 1999); *Triomphe Investors v. City of Northwood*, 49 F.3d 198, 202 (6th Cir. 1995).  As a result, we can proceed to the merits of this case.

**B.**

Defendants argue that because "L.E. already litigated all issues surrounding the propriety of her five (5) day suspension stemming from the May 8, 2008 bus incident with M.C., including the issue of whether or not it was consensual," and the "[h]earing [o]fficer's [f]indings established that L.E.'s actions were consensual," "there exists no factual basis for L.E. to claim retaliation, damages, depravation of due process, or educational benefit."  Plaintiffs argue that if this court does reach the merits of the case, it should affirm the denial of qualified immunity to Smathers because the hearing officer made no findings on consent and never addressed (and was not empowered to address) L.E.'s constitutional and statutory claims.

"[F]ederal courts must give the factual findings of a state agency that is acting in a judicial capacity preclusive effect if such findings would have preclusive effect in the State's courts." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1046 (6th Cir. 2001) (citations omitted); *see also Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 107 (1991) ("We have long favored application of the common-law doctrines of collateral estoppel (as to issues) and res judicata (as to claims) to those determinations of administrative bodies that have attained finality."). Ohio courts

give preclusive effect to factual findings in a previous proceeding "where the proceeding[] [was] judicial in nature, factual disputes resolved were clearly relevant to issues properly before it, and both parties had a full and fair opportunity to argue their version of the facts and an opportunity to seek out review of any adverse findings." *Wilson v. Semco, Inc.*, 152 Ohio App. 3d 75, 81, 786 N.E.2d 906, 910 (Ohio Ct. App. 2002) (citing *Office of Consumers' Counsel v. Pub. Utils. Comm'n of Ohio*, 16 Ohio St. 3d 9, 10, 475 N.E.2d 782, 873 (Ohio 1985)). Plaintiffs do not dispute that the suspension hearing was judicial in nature and that the hearing officer's findings *could* be given preclusive effect if otherwise appropriate.

Under Ohio law, "[t]he doctrine of res judicata encompasses the two related concepts of claim preclusion, also known as res judicata or estoppel by judgment, and issue preclusion, also known as collateral estoppel." *State ex rel. Nickoli v. Erie MetroParks*, 124 Ohio St. 3d 449, 453, 2010-Ohio-606, 923 N.E.2d 588, 592 (citations and internal quotations omitted) (alteration in original). While claim preclusion "prevents subsequent actions, by the same parties or their privies, based upon any claim arising out of a transaction that was the subject matter of a previous action," issue preclusion or collateral estoppel "precludes the relitigation, in a second action, of an issue that had been actually and necessarily litigated and determined in a prior action that was based on a different cause of action." *Id.* (citations and internal quotations omitted).

Pursuant to Ohio Revised Code § 3313.66(E), Collette, the suspension hearing officer, had the authority to act on behalf of Southwestern and to "affirm the order of suspension . . . reinstate the pupil, or otherwise reverse, vacate, or modify the order of suspension." At the start of the hearing, Collette informed the parties that the purpose of L.E.'s suspension hearing was "for the

family to present reasons why the student shouldn't be suspended or [sic] rather explaining the student's actions." Collette also explained that the reason given for the suspension was "a violation of the Southwestern City School Student Code of Conduct for disruption of school," and noted that the suspension form also stated that "[L.E.] was involved in inappropriate sexual behavior with another male student on the bus. [L.E.] claims the male student forced her to perform these behaviors."

Two witnesses, McDaniel and Smathers, testified at the hearing and counsel for Southwestern and L.E. were permitted to question them. Smathers testified that, based on his investigation and his professional experience, he could not "validate whether [L.E.] was forced or not, but [he did] know that something inappropriate happened and disrupted school." He also stated that "at no point did I ever say that [L.E.] wasn't forced. I called the police. I called Children's Services. I talked to the parents. I helped them through the process . . . . [I]n my opinion I think that something inappropriate happened at my school. As far as the force and nature, I have no proof on that, so I referred it to the police." Smathers repeatedly asserted that he could not "make a decision whether [L.E.] was voluntarily a participant in [the conduct in question]." When asked why he suspended L.E. when he could not determine whether she was forced to perform oral sex on M.C., Smathers stated that he "suspended [L.E.] because she and another boy performed inappropriate sexual acts in the back of the bus, both of them had admitted to that, and it disrupted school." Thus, it appears that Smathers believed that because L.E. admitted to participating in sexual activities with M.C., she should be suspended for the resulting disruption of school, regardless of whether she was forced to participate in some or all of these activities. L.E.'s attorney also presented the statement

L.E. wrote the day following the incident, and other students' statements were discussed, but their names were not revealed.

Several days after the hearing, Collette issued a decision affirming L.E.'s suspension. Collette made the following relevant findings of fact:

> [L.E.] was suspended for five days from Finland Middle School on May 12, 2008 for violating the South-Western City Schools Student Code of Conduct for Disruption of School based on her involvement in a sexual encounter on the school bus with a male student.
>
> Principal Smathers was made aware of the incident by a teacher. Upon learning of the incident, Principal Smathers interviewed several students including [L.E.] During [L.E.'s] interview, Principal Smathers provided [L.E.] with notice of an intended suspension and gave her an opportunity to respond. [L.E.] admitted that she was involved in a sexual encounter with a male student on the bus. Although she acknowledged that she participated in the sexual activity she reported that she was forced to participate in some of the conduct. [L.E.] provided names of potential witnesses to Mr. Smathers. Although Mr. Smathers interviewed several of the students named by [L.E.], he was not able to identify any direct witness to the alleged force. In written statements collected from the students, the students reported that [L.E.] acknowledged her participation in the sexual activity.
>
> The principal acted promptly and prudently in contacting Franklin County Children's Services and the local law enforcement agency to report [L.E.'s] allegations as soon as he was made aware of the incident.
>
> The sexual activity between [L.E.] and the male student caused a disruption of school since many students were talking about the incident during school time thereby diverting attention from school activities, and the principal had to disrupt instruction to interview students regarding the incident.
>
> In conclusion I find that [L.E.] violated the South-Western City Schools Student Code of Conduct for Disruption of School.

Contrary to defendants' argument, these findings of fact do not preclude plaintiffs from asserting L.E.'s claims in the district court. Defendants do satisfy some of the elements of res

judicata. However, claim preclusion does not apply because the "transaction" that was the subject matter of the suspension hearing was Smathers's suspension of L.E., and did not incorporate the entire course of conduct on which L.E. premised her § 1983 due process claims against Smathers. *See Portage Cnty. Bd. of Comm'rs v. City of Akron*, 109 Ohio St. 3d 106, 123, 2006-Ohio-954, 846 N.E.2d 478, 495 (defining "transaction" as a "common nucleus of operative facts"). Further, the suspension hearing officer was not empowered to consider L.E.'s constitutional or statutory claims. Nor does issue preclusion apply to bar L.E.'s due process claims. Collette's findings of fact do not explicitly state or even suggest that she found that L.E. consented to the improper sexual conduct. And, even if Collette had in fact determined that L.E. did consent to the sexual acts, it is unclear how such a finding would preclude L.E. from presenting her constitutional and statutory claims in federal court, as it is doubtful "whether an elementary school child can welcome sexual advances." *Mary M. v. N. Lawrence Cmty. Sch. Corp.*, 131 F.3d 1220, 1225 (7th Cir. 1997).

Defendants make no other arguments beyond the one described above. In fact, defendants' reply brief explicitly states that "[t]he issue of whether or not [plaintiffs] had a clearly established constitutional right under the applicable case law has never been before this Court in this appeal," and that "the second [and third] prong[s] of the qualified immunity test . . . [are] not even at issue in this appeal." Given these circumstances, we **AFFIRM** the district court's denial of qualified immunity to Smathers.

No. 10-4011
*Evans, et al. v. Board of Education Southwestern City School District, et al.*

Concurrence by Judge Zouhary: I concur in the judgment. After carefully reviewing the record, the applicable law, and the parties' briefs, I find the district court properly rejected Smathers' res judicata and collateral estoppel claims. Part IV-A of the district court's opinion ("Res Judicata") carefully sets forth the correct reasoning.