This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Patricia Dunnigan, appeals from the judgment of the Lorain County Court of Common Pleas that granted the motion for summary judgment of Appellees, City of Lorain and Craig Foltin. We affirm in part and reverse in part.
{¶ 2} On February 17, 1999, Appellant filed a complaint against Appellees seeking damages for the injuries she sustained from alleged age and sex discrimination, failure to promote, wrongful discharge, and slander. Discovery followed. Thereafter, on December 13, 1999 and December 15, 1999, Appellees filed two motions for summary judgment, which were subsequently granted by the trial court. Appellant timely appeals and raises four assignments of error for review. These will be addressed jointly for ease of review.
 ASSIGNMENT OF ERROR I {¶ 3} "The trial court committed prejudicial error in granting [s]ummary [j]udgment in favor of [Appellees] as there are genuine issues of material fact * * * upon which reasonable minds can reach differing conclusions with regard to Appellant's claims of age and sex discrimination."
 ASSIGNMENT OF ERROR II {¶ 4} "The trial court committed prejudicial error in granting [s]ummary [j]udgment in favor of [Appellees] as there are genuine issues of material fact * * * upon which reasonable minds can reach differing conclusions with regard to Appellant's claim of failure to promote."
 ASSIGNMENT OF ERROR III {¶ 5} "The trial court committed prejudicial error in granting [s]ummary [j]udgment in favor of [Appellees] as there are genuine issues of material fact upon which reasonable minds can reach differing conclusions with regard to Appellant's claims for wrongful termination."
 ASSIGNMENT OF ERROR IV {¶ 6} "The trial court committed prejudicial error in granting [s]ummary [j]udgment in favor of [Appellees] as there are genuine issues of material fact upon which reasonable minds can reach differing conclusions with regard to Appellant's claims for slander."
{¶ 7} Appellant appeals the trial court's decision granting summary judgment in favor of Appellees. We agree in part.
{¶ 8} Pursuant to Civ.R. 56(C), summary judgment is proper if: "(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327. An appellate court reviews the trial court's granting of summary judgment de novo. Grafton v. Ohio Edison Co. (1996),77 Ohio St.3d 102, 105; Klingshirn v. Westview Concrete Corp. (1996),113 Ohio App.3d 178, 180. Any doubt is to be resolved in favor of the non-moving party. Viock v. Stowe-Woodward Co. (1983), 13 Ohio App.3d 7,12.
{¶ 9} The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and is to identify portions of the record that demonstrate the absence of genuine issues of material fact as to an essential element of the non-moving party's claims. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. The burden will then shift to the non-moving party, to offer "specific facts showing that there is a genuine issue for trial." Id. at 293. See, also, Civ.R. 56(E). The non-moving party may not rest on the mere allegations and denials in the pleadings, but must submit some evidentiary material showing a genuine dispute over the material facts. Id. at 293.
 Age and Sex Discrimination
{¶ 10} Appellant asserts that she was discriminated against by Appellees in violation of R.C. 4112.02(A). That section provides: "It shall be an unlawful discriminatory practice: (A) For any employer, because of the * * * sex * * * [or] age * * * of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire[.]" It is important to note that the Supreme Court of Ohio has held that federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000(e) et seq., Title 42, U.S. Code, is applicable to cases involving R.C. Chapter 4112. Haroldv. Bridgestone/Firestone, Inc. (Sept. 16, 1998), 9th Dist. No. 18915, at 6-7, citing Plumbers Steamfitters Commt. v. Ohio Civil RightsComm. (1981), 66 Ohio St.2d 192, 196.
{¶ 11} The two ways to prove employment discrimination are disparate treatment and disparate impact. Abram v. Greater ClevelandRegional Transit Authority, 8th Dist. No. 80127, 2002-Ohio-2622, at ¶ 40.
 Disparate Treatment
{¶ 12} Disparate treatment occurs when an employer treats an employee less favorably than others based on an unlawful motive. Abram at ¶ 40, citing Internatl. Bhd. of Teamsters v. United States (1977),431 U.S. 324, 335, fn. 15, 52 L.Ed.2d 396. To prevail in a disparate treatment employment discrimination case, plaintiff must show discriminatory motive. Mauzy v. Kelly Services, Inc. (1996),75 Ohio St.3d 578, 583. A plaintiff may establish a prima facie case of unlawful discrimination by producing either direct or indirect evidence of discrimination. Harold, supra, at 8. See, also, Crosier v. QuikeyMfg. Co., Inc. (Feb. 28, 2001), 9th Dist. No. 19863, at 17, and McDonnellDouglas Corp. v. Green (1973), 411 U.S. 792, 802, 36 L.Ed.2d 668. Direct evidence is evidence, of any nature, showing that the employer more likely than not was motivated by a discriminatory intent. Crosier, supra, at 17. See, also, Harold, supra, at 7, and Mauzy,75 Ohio St.3d at 586-87.
{¶ 13} Absent direct evidence in the record from which a prima facie case of discrimination could be established, appellant may prove discrimination by showing: "(1) that she is a member of a protected class; (2) that she suffered an adverse employment action; (3) that [she] was qualified for the position; and (4) that comparable employees not within the protected class were treated more favorably." Harold, supra, at 9. See, also, Crosier, supra, at 25; McDonnell, 411 U.S. at 802;Kohmescher v. Kroger Co. (1991), 61 Ohio St.3d 501, syllabus; and Byrnesv. LCI Communications Holdings Co. (1996), 77 Ohio St.3d 125, 128. For purposes of age discrimination, the United States Supreme Court modified the fourth element of the above test; the plaintiff needs to be replaced by a "substantially younger" individual. O'Connor v. Consolidated CoinCaterers Corp. (1996), 517 U.S. 308, 313, 134 L.Ed.2d 433. This Court has previously adopted the standard set forth in O'Connor. See Outzen v.Continental Gen. Tire, Inc. (Feb. 2, 2000), 9th Dist. No. 19604, at 7. The function of this four-part test allows a "plaintiff to raise an inference of discriminatory intent indirectly." Mauzy,75 Ohio St.3d at 583.
{¶ 14} Once the plaintiff establishes a prima facie case, the employer must overcome the presumption of discriminatory intent by producing evidence of a legitimate, nondiscriminatory reason for his actions. Id. at 582. Then, the plaintiff is permitted to show that the given reasons were merely a pretext for unlawful discrimination. Id. "Mere conjecture that [the] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." Carney v. Cleveland Hts.-Univ. Hts. City School Dist. (2001),143 Ohio App.3d 415, 429. The Plaintiff is required to produce evidence that the employer's stated reasons were factually untrue. Reeves v.Sanderson Plumbimg Prods., Inc. (2000), 530 U.S. 133, 143,147 L.Ed.2d 105. See, also, Carney, 143 Ohio App.3d at 429.
{¶ 15} In this case, it is uncontroverted that Appellant is a member of a statutorily protected class. R.C. 4112.02(A) protects individuals from discrimination by employers on the basis of age and sex. R.C. 4112.01(A)(14) defines age as "at least forty years old." Appellant, a female, was not promoted to the Assistant Deputy Director Auditor II position, and was forty-seven years old at the time of her discharge. Appellees concede, in their motion for summary judgment, that Appellant has established a prima facie case of sex discrimination through indirect evidence. We will assume Appellant has also established a prima facie case of age discrimination for ease of review.
{¶ 16} Assuming Appellant has shown a prima facie case of discrimination, Appellant's first assignment of error is still not well taken. Appellees have offered legitimate reasons for Appellant's removal. Two letters of reprimand were sent to Appellant, stating that as of late Appellant was: uncooperative; a disruptive influence in the office; lacking respect for co-workers; making disparaging comments about Appellee Foltin to co-workers; consistently tardy; and undermining the authority of Appellee Foltin. Appellant has not shown that these stated reasons were a pretext for the intentional discrimination based on age or sex; her reference to Appellee Foltin's comment that Appellant's replacement was "young" but would "grow into" the job is not enough. Appellant has not produced evidence that Appellees' reasons were factually untrue as required by Reeves.
{¶ 17} Based on the above reasoning, Appellant has not put forth evidence establishing disparate treatment by Appellee.
 Disparate Impact
{¶ 18} "Disparate impact results from facially neutral employment practices that have a disproportionately negative effect on certain protected groups and which cannot be justified by business necessity."Abram, at ¶ 41, quoting Internatl. Bhd. of Teamsters,431 U.S. at 335-36, fn. 15. A showing of discriminatory motive is not required because the claim is based on statistical evidence of systematic discrimination; a pattern or practice which results in discrimination.Abram, at ¶ 41, citing Internatl. Bhd. of Teamsters,431 U.S. at 335-36. An employee may prevail if she established that the employer has engaged in a specific practice which has excluded from employment members of a protected class. Watson v. Fort Worth Bank Trust (1988),487 U.S. 977, 994, 101 L.Ed.2d 827. More specifically, it is the plaintiff's burden to show that an adverse effect was caused by the employment practice and to offer "statistical evidence of a kind and degree sufficient to show that the practice in question has caused the [discharge of employees] because of their membership in a protected group." Robinson v. City of North Olmstead (N.D.Ohio. 1997), Eastern Division No. 1:93CV1203, citing Watson, 487 U.S. at 994.
{¶ 19} Once plaintiff establishes a prima facie case, the burden of production shifts to the employer to produce evidence of a "business justification" for its "neutral" hiring criteria. Abram, at ¶ 50, citing Wards Cove Packing Co., Inc. v. Atonio (1989), 490 U.S. 642, 658,104 L.Ed.2d 733. However, the burden of persuasion remains with the plaintiff to show that the challenged actions fail to serve the employer's legitimate employment goals. Abram, at ¶ 50, citing Wards CovePacking, 490 U.S. at 659-60.
{¶ 20} In her complaint, Appellant alleges that she was discriminated against, based on her age and sex, when Appellee Foltin discharged her. Appellant has offered evidence of Appellee's hiring practices, but has failed to include evidence of his employee termination practices. In fact, Appellee Foltin testified at his deposition that it "would not be [his] practice to dismiss anyone without cause[.]" Furthermore, there is no evidence in the record that anyone other than Appellant was terminated, let alone evidence of a pattern or practice on the part of Appellee Foltin in regards to the termination of employees. Appellant has tried to meet this burden by producing evidence of Appellees' workforce, which mainly consists of younger males. However, as Appellant is asserting age and sex discrimination in her termination,
reliance on evidence of Appellees' hiring practices is misplaced. Accordingly, Appellant has not set forth a prima facie case of disparate impact.
{¶ 21} We find the Appellant has failed to meet her burden of setting forth the existence of a genuine triable issue of fact and the trial court correctly granted summary judgment to Appellees.
 Failure to Promote
{¶ 22} Appellant contends that she was discriminated against with respect to her failure to be promoted to the position of Assistant Deputy Director Auditor II position. We disagree.
{¶ 23} Clearly, the record is devoid of evidence showing discriminatory intent on the part of Appellee with regard to this failure to promote claim. Instead, the proffered evidence reveals that Appellant was offered the position of Deputy Auditor II, before it was accepted by a younger male. The position was open for Appellant to accept. However, as Appellant decided to reject the position via letter, "I do not accept the Deputy Auditor II position," Joel Provenza was then promoted.
{¶ 24} Whereas, Appellant has not established a prima facie case of discriminatory intent, Appellant's second assignment of error is overruled.
 Wrongful Discharge
{¶ 25} Appellant contends that she was wrongfully discharged. More specifically, she asserts three different claims: public policy, promissory estoppel, and implied contract. As the public policy theory is dispositive of this assignment of error, we will address that issue first.
{¶ 26} With regard to public policy, Appellant avers that she was wrongfully terminated for three reasons: 1) her refusal to conduct political activities at her place of employment during working hours; 2) her refusal to purchase fundraising tickets for Appellee Foltin; and 3) her report to the Lorain Police Department concerning the performance of political activity at her place of employment during working hours. Appellant's argument is well taken.
{¶ 27} Appellant is an unclassified employee and thus an employee-at-will. The employment-at-will doctrine allows an employer to discharge an employee "at will for any cause, at any time whatsoever, even if done in gross or reckless disregard of [an] employee's rights."Painter v. Graley (1994), 70 Ohio St.3d 377, 382, quoting Phung v. WasteManagemen., Inc. (1986), 23 Ohio St.3d 100, 102, quoting Peterson v.Scott Constr. Co. (1982), 5 Ohio App.3d 203, 205. However, Ohio has recognized an exception to the employment-at-will doctrine. See Painter,70 Ohio St.3d 377 at paragraph two of the syllabus. See, also, Van Swedenv. Goodyear Tire Rubber Co., 9th Dist. No. 20710, 2002-Ohio-2654, at ¶ 12. An at-will employee has a cause of action for tortious wrongful discharge when his or her discharge is in contravention of a clear public policy. Van Sweden at ¶ 12. See, also, Painter,70 Ohio St.3d 377 at paragraph two of the syllabus.
{¶ 28} To establish a claim for tortious wrongful discharge, plaintiff must prove four elements: "(1) That [a] clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element)[;] (2) That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element)[;] (3) The plaintiff's dismissal was motivated by conduct related to the public policy (the causation element)[; and] (4) The employer lacked overriding legitimate business justification for the dismissal (the overriding justification element)." Painter,70 Ohio St.3d at 384, fn. 8. "Clarity" and "jeopardy" are questions of law to be determined by the court, and "causation" and "overriding justification" are questions of fact for the jury. Bailey v. Priyanka Inc. (Oct. 10, 2001), 9th Dist. No. 20437, at 7, citing Kulch v. Structural Fibers,Inc. (1997), 78 Ohio St.3d 134, 151. Questions of law are reviewed under a de novo standard. Bailey, supra, at 7, citing Nationwide Mut. FireIns. Co. v. Guman Bros. Farm (1995), 73 Ohio St.3d 107, 108.
{¶ 29} We now proceed to determine if the trial court properly granted summary judgment against Appellant. Upon review of the record before us, we find the trial court erred in granting Appellee's motion for summary judgment. This Court has stated that, "[w]hen pleading this cause of action, a plaintiff must indicate the specific public policy at issue and explain how it was violated." Carver v. Universal Well Serv.,Inc. (Aug. 20, 1997), 9th Dist. No. 96CA0082, at 3. Appellant has met this burden. Appellant asserts that the "clear public policy that [Appellee] violated was the commission of a crime or her being forced to commit a crime by her employer."
{¶ 30} The Ohio Supreme Court has recognized an at-will employee's claim of wrongful termination in violation of public policy in the context of an employee's refusal to commit criminal acts. Collins v.Rizkana (1995), 73 Ohio St.3d 65, 71. "The Rizkana Court specifically held that employees discharged for `refusal to participate in activities which arguably violate' criminal laws state a claim for wrongful discharge in violation of public policy." Anders v. Specialty Chem.Resources (May 29, 1997), 8th Dist. No. 69648, quoting Rizkana,75 Ohio St.3d at 71. Even though there may have been no crime committed, it is still a violation of public policy to require an employee to do an act proscribed by law. Anders, supra, quoting Rizkana, 75 Ohio St.3d at 71. Additionally, this Court has held that "Ohio has a clear public policy in favor of reporting crimes and that an employee's dismissal for reporting possible criminal conduct of another employee while at work would jeopardize that public policy." Bailey, supra, at 8, citing McKnight v.Goodwill Indust. of Akron, Inc. (Sept. 6, 2000), 9th Dist. No. 99CA007504, at 11. Thus, Appellant has satisfied the clarity and jeopardy elements of a public policy claim. Dismissal of an employee for either the failure to commit criminal activity or the reporting of criminal activity would jeopardize the above-referenced public policy.
{¶ 31} Finally, we must discern whether Appellant's dismissal was motivated by conduct related to the public policy and whether Appellee asserted an overriding legitimate business justification for her termination. Upon review of the record, we conclude that these represent genuine issues of material fact for the jury to decide. Appellant presented evidence that her dismissal was motivated by her failure to engage in political activity during working hours and her reporting of Appellee Foltin's asserted wrongful behavior to the Lorain City Police Department. In her affidavit, Appellant asserts that she received only positive reviews until the day she filed the police report and that she received two letters of reprimand approximately the same date the police report was filed. Appellant stated that she was offered a promotion one year earlier but declined the position "due to the stated obligatory political requirements that [she] felt [were] in conflict to [R.C.]3517.092[.]" Appellant further stated that "[s]ince the events which purportedly were the basis for [her] reprimands had occurred years before, there was no new act or information that could be pointed to as being the reason for [the] sudden reprimands. The only thing that occurred recently before [she] received these letters was the fact that [she] filed a police report." Appellee Foltin presented contradictory evidence suggesting that Appellant's dismissal was motivated by her tardiness, uncooperativeness, and disruptiveness in the office. Accordingly, we conclude that material issues of fact remain as to Appellant's third assignment of error as it relates to wrongful discharge in violation of public policy.
{¶ 32} Appellant's third assignment of error as it relates to public policy, is sustained. Appellant's third assignment of error, as it relates to promissory estoppel and implied contract, needs not be discussed as the disposition of wrongful termination in violation of public policy renders these claims moot. See App.R. 12(A)(1)(c).
 Slander
{¶ 33} In her fourth assignment of error, Appellant contends that the trial court erred in granting summary judgment in favor of Appellees in relation to the slander claim. Appellant references four newspaper articles in which she feels Appellee Foltin made defamatory statements about her business reputation. We disagree.
{¶ 34} The elements of a defamation action are: "(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." Akron-Canton Waste Oil, Inc. v. Safety-Kleen OilServ., Inc. (1992), 81 Ohio App.3d 591, 601, quoting 3 Restatement of the Law 2d, Torts (1977), 155, Section 558.
{¶ 35} Slander is an oral defamatory statement. Hughes v.Fordeley (June 30, 2000), 11th Dist. No. 99-T-0115, citing McCartney v.Oblates of St. Francis deSales (1992), 80 Ohio App.3d 345, 353. Slander per se, one of the two types of actionable slander, is "accomplished by the very words spoken." McCartney, 80 Ohio App.3d at 353, citing Raineyv. Shaffer (1983), 8 Ohio App.3d 262, 264 and Becker v. Toulmin (1956),165 Ohio St. 549, 556. Slander per se includes statements from any of the following categories: 1) words which import an indictable criminal offense involving moral turpitude; 2) words which impute a loathsome or contagious disease which excludes one from society; or 3) words which tend to injure one in his trade or business occupation. Hughes, supra, citing McCartney, 80 Ohio App.3d at 353. If a statement is found to be slander per se, general damages are presumed. Bram v. M. Weingold Co. (Mar. 30, 2000), 8th Dist. No. 76041.
{¶ 36} Slander per quod is "determined by the interpretation of the listener, through innuendo, as between an innocent or harmless meaning and a defamatory one." McCartney, 80 Ohio App.3d at 353, citingRainey, 8 Ohio App.3d at 264. Damages in this category are not presumed, and there can be no recovery without proof of special damages. Bram,
supra, citing Rainey, 8 Ohio App.3d at 264. A plaintiff is to prove that he was damaged by the statements. See Bram, supra. The determination of whether a statement is slander per se or per quod is a question of law.King v. Bogner (1993), 88 Ohio App.3d 564, 568.
{¶ 37} In her brief, Appellant asserts that there were four separate occurrences of slander. The first two alleged slanderous statements occurred on February 5, 1997. In response to a question from a Morning Journal reporter concerning Appellant's attorney, and his involvement in this case, Appellee Foltin responded, "It's looking pretty obvious that politics played a role. The good ol' boys stick together." The Plain Dealer printed the second alleged defamatory statement. In that article the author states that "Foltin blamed some of his current problems on his relationship with [Appellant's] husband[.]" Appellant contends that this statement suggests her motivation was personal. In the third statement, printed in the February 7, 1997 edition of the Chronicle, Appellee Foltin was quoted as saying that Appellant was a "spy" who "offered [his] head to them." The final alleged defamatory statement was contained in the February 12, 1997 edition of the Morning Journal. The statement reads as follows: "[Appellee] Foltin has repeatedly labeled [Appellant] as a disgruntled employee who he also said is part of a `failed political assassination' that included involvement by Mayor Joseph Koziura and his administration."
{¶ 38} As stated above, the determination as to whether a statement constitutes slander per se or slander per quod is a question of law. See Id. These alleged slanderous statements will be analyzed under a slander per quod theory because in order to determine if they are defamatory we have to resort to "the interpretation of the listener, through innuendo, as between an innocent or harmless meaning and a defamatory one." McCartney, 80 Ohio App.3d at 353. Accordingly, Appellant must present evidence relating to each of the four elements of a defamation action. See Akron-Canton Waste Oil, Inc.,591 Ohio App.3d at 601.
{¶ 39} Upon thorough review of the record, we find that Appellant has not met her Dresher burden. Appellant has not offered "specific facts showing that there is a genuine issue for trial" in regards to her slander claim. Dresher, 75 Ohio St.3d at 293. Specifically, Appellant has not shown that she suffered financial damage or damage to her reputation as a result of these statements.
{¶ 40} Although Appellant's complaint alleged that she suffered injury to her personal and business reputation, and was discharged from her employment with Appellee Foltin as a result of the slanderous statements, Appellant's deposition testimony demonstrates otherwise. At her deposition, Appellant avers that she was discharged due to her failure to participate in political activities during working hours. Appellant does not state that she was discharged as a result of the alleged defamatory statements made by Appellee Foltin. Furthermore, the record is devoid of evidence pertaining to Appellant's injured reputation.
{¶ 41} In contrast, Appellant testified that after her termination, Dave Garland ("Garland") "recruited her" but then was unable to employ her due to the reorganization taking place inside his company. However, Appellant stated that Garland recommended her to Jennifer Fenderbosch who subsequently hired her. Appellant asserted that she was never told nor had she ever heard that she was not hired because of the publicity surrounding the investigation of Appellee Foltin and her subsequent termination. Appellant did not name one individual that thought less of her or who now thinks that her reputation is less than before the statements were published. Furthermore, Appellant stated that "[m]y whole family stood behind me." Thus, according to Appellant's own testimony, her reputation has not been affected by Appellee Foltin's statements.
{¶ 42} Additionally, in Appellant's affidavit, attached to her brief in opposition to Appellees' motion for summary judgment, Appellant states that "[she] was extremely upset by these statements, all of which were untrue, and [she] was concerned that since they were aimed at my employment with the City, the comments might affect my future employment." Appellant has still not put forth the required proof of special damages. Her assertion that she was concerned that Appellee Foltin's statements would harm her future employment is not enough. Concern on the part of one claiming slander does not amount to proof of a damaged reputation. Accordingly, Appellant's fourth assignment of error is overruled. The trial court properly concluded that Appellee Foltin's statements were not defamatory.
{¶ 43} Appellant's third assignment of error is sustained as it relates to public policy. Appellant's first, second, and fourth assignment's of error are overruled. Accordingly, the judgment of the Lorain County Court of Common Pleas is affirmed in part and reversed in part and remanded for proceedings consistent with this opinion.
BAIRD, J., BATCHELDER, J. CONCUR.